**WORLD AIRWAYS, INC.,**
Petitioner/Plaintiff-Appellee,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION and its Affiliated Local 2707, Cockpit Crewmembers, Respondents/Defendants-Appellants.**

No. 77–2859.

United States Court of Appeals, Ninth Circuit.

July 17, 1978.

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Joseph J. Kaplon (argued), of Pappy, Kaplon & Vogel, Los Angeles, Cal., for Intern. Broth. of Teamsters, Airline Div.

Jerome C. Byrne (argued), Kenneth D. Hoffman (appeared), of Gibson, Dunn & Crutcher, Los Angeles, Cal., for World Airways, Inc.

Before BROWNING and WRIGHT, Circuit Judges, and KUNZIG *, Judge.

PER CURIAM:

This is an appeal from a district court judgment vacating part of an Arbitration Award which required World Airways, Inc. (plaintiff-appellee or World) to retrain and then provide an opportunity to requalify to a Pilot-in-Command who had been demoted for repeated errors of judgment. World's motion to vacate had been brought in the United States District Court for the Central District of California. The International Brotherhood of Teamsters, Airline Division, and its Affiliated Local 2707, Cockpit Crewmembers (defendants-appellants or Union), claim that the District Judge erred in his finding that the Arbitrator had exceeded his authority. However, we agree with the District Judge that the Arbitrator, in ordering the pilot's retraining and requalification opportunity, exceeded his authority and usurped a responsibility of the airline under Federal aviation law. We therefore affirm the judgment below.

In October 1975, Reinhold Becker, a Boeing 747 aircraft Pilot-in-Command or Captain for World, was suspended for a two-month period and permanently demoted to the position of co-pilot or First Officer. The suspension and demotion were the result of a series of incidents which led World to the conclusion that Becker's judgment had deteriorated to the point where he posed a threat to life if he were to remain as a Pilot-in-Command. The incidents included a landing in Dallas in March 1975 with an extremely low level of fuel,[1] missed approaches at airports in London and Rome in June 1975, and another missed approach at Bangor, Maine in September 1975, where there was evidence of hurried and disoriented pre-approach and briefing, improperly set flaps, and off-course bearing.

Following the Bangor, Maine incident, World held a meeting of its Flight Safety Committee.[2] The Committee unanimously concluded that Becker could not continue to serve as a Pilot-in-Command due to his poor judgment. The Committee also decided that Becker should be suspended for two months and reduced to First Officer status, where he would no longer be responsible for exercising the split-second, life-or-death judgment continuously required of a Pilot-in-Command.

Upon his demotion, Becker filed a grievance which was submitted to arbitration.[3] The Arbitrator rendered an Opinion and Award which found that (1) World had just cause for the demotion of Becker, (2) there was no just cause for Becker's suspension,[4]

---

* The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

1. Following an investigation of this incident, the Federal Aviation Administration recommended Becker be suspended from fifteen to eighteen days. The suspension lasted from May 29 through June 15, 1975.

2. The Committee consisted of three officers of World, all of whom were pilots.

3. The Collective Bargaining Agreement (CBA) provided for the use of an Adjustment Board as required by 45 U.S.C. § 184 (1970). The Union and World agreed to waive the use of the Adjustment Board and instead submitted the grievance to an Arbitrator.

4. Becker was awarded compensation at the rate of a 747 First Officer for the period during which he was suspended. World did not contest this part of the Arbitrator's Award.

and (3) Becker was to be retrained and then given an opportunity to requalify as a Pilot-in-Command. World filed a Petition in United States District Court for the Central District of California seeking to vacate the third portion of the Arbitrator's Award which compelled World to retrain Becker and provide him with an opportunity to requalify as a Pilot-in-Command.[5] The Union filed a counterclaim to confirm the entire Arbitration Award. Judge Albert C. Wollenberg granted World's request to strike the contested portion of the Award, and denied the Union's counterclaim. The Union has appealed to this court. We agree with the District Judge that the Arbitrator exceeded his authority, and affirm.

■ The Union is quite correct in its argument that arbitration is the preferred means for settlement of labor disputes. Allowing courts full review of all arbitration decisions would undermine this important federal policy. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *Id.* at 597, 80 S.Ct. at 1361. In the rare case when an arbitrator goes beyond the scope of his authority, as World maintains happened here, courts do have the power to vacate the arbitration award. *City Electric, Inc. v. Local Union 77, International Brotherhood of Electrical Workers*, 517 F.2d 616, 618–19 (9th Cir.), *cert. denied*, 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975).

The Union maintains that retraining Becker will not interfere with World's safety responsibilities. It would have us believe that the exercise of judgment rests upon

knowledge and training alone and that Becker, with just additional technical training, could regain the necessary degree of judgment. World did not, however, question Becker's technical or mechanical abilities, but instead submitted evidence that the retraining ordered by the Arbitrator could not improve a pilot's overall *judgmental* ability as a Pilot-in-Command.

■ The District Judge specifically found that *Becker had been demoted for judgmental deficiencies that could not be remedied by retraining.*[6] This court will not upset a district court's findings of fact unless they are clearly erroneous. Fed.R. Civ.P. 52(a); *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1166–67 (9th Cir. 1977).

■ The district court's finding that Becker's judgmental deficiencies would not be cured by retraining is supported by the record. The incidents described *supra* definitely show that Becker is not now capable of exercising the judgment necessary to insure the safety of an airplane carrying many hundreds of people. The Arbitrator also found this to be so. Given the awesome responsibility that a Pilot-in-Command has, in any subsequent evaluation of Becker, World would be negligent in not looking at these prior judgmental mistakes. There was ample evidence that further training would not improve Becker's judgment, but only sharpen his technical abilities, which World concedes are sufficient. We cannot see how under these circumstances Judge Wollenberg's finding that retraining would not improve Becker's judgment so as to remedy the deficiencies that caused his demotion can be considered erroneous.

Thus, the order of the Arbitrator can only be interpreted to assume that Becker's

5. Paragraph 3 of the Arbitrator's Award reads:

   3. The Grievant is forthwith to be given training for upgrading to Captain, B–747, and upon completion of the training is to be given a full and fair opportunity to requalify for the position from which he was demoted. With respect to this, the parties are referred to Article XIII, on Training and Upgrading in the collective bargaining agreement [CBA].

Article XIII of the CBA, however, deals with *technical* training and does *not refer to judgmental abilities.*

6. Finding of Fact 17 reads:

   17. Retraining will not remedy the deficiencies in judgment that led to Reinhold Becker's demotion.

judgmental deficiencies can be overcome by more training, an assumption that the district court explicitly rejected. That technical training is unlikely to discover judgmental problems in a Pilot-in-Command is demonstrated by Becker himself, who presumably completed similar training when he originally qualified as a Pilot-in-Command. Since World admits that Becker is technically competent, he would be almost sure to pass any additional technical tests. Therefore, the Arbitrator's order has the effect of leading to Becker's almost definite requalification without World's determination that he is judgmentally fit. World contends that such an order is beyond the scope of the Arbitrator's authority, since the responsibility of determining judgmental qualifications for a Pilot-in-Command has been placed on the airlines by federal law.

■ Federal law has pre-empted the area of aviation. *See* 49 U.S.C. § 1508(a)(1970); *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 638–39, 93 S.Ct. 1854, 36 L.Ed.2d 347 (1973); *United States v. Christenson*, 419 F.2d 1401, 1403–04 (9th Cir. 1969). Congress had directed the Administrator of the Federal Aviation Administration to give full consideration to the duty resting upon air carriers to perform their services with the highest degree of safety in the public interest. 49 U.S.C. § 1421(b)(1970). The courts have recognized this duty. *Air East, Inc. v. National Transportation Safety Board*, 512 F.2d 1227, 1229 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *United Airlines, Inc. v. Wiener*, 335 F.2d 379, 389 (9th Cir.), *cert. dismissed sub nom. United Airlines, Inc. v. United States*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964). Regulations promulgated pursuant to the Federal Aviation Act establish that it is the duty of the carrier to determine the competency of its pilots in the interests of public safety taking into account such things as "*personal characteristics that could adversely affect safety.*" 14 C.F.R. § 121.413(4)(ii) (emphasis added). The Civil Aeronautics Board [7] in the course of investigating an aircraft accident has stated:

> [T]he responsibility and authority which the pilot-in-command has for the operation of a transport airplane also requires the exercise of sound judgment . . .
>
> *    *    *    *    *    *
>
> . . . . Safety in air transportation requires the air carrier . . . to identify those pilots who are marginal or who demonstrated a failure to adhere to proven procedures and reassign them to duties compatible with their capabilities and limitations.

Aircraft Accident Report of the Civil Aeronautics Board, adopted June 3, 1966, released June 7, 1966, p. 12.

Failure of an airline to comply with the provisions of the Federal Aviation Act and regulations issued pursuant to the Act can result in both administrative and civil penalties against the carrier. *See Air East, Inc. v. National Transportation Safety Board, supra*, and *In Re Paris Air Crash of March 3, 1974*, 399 F.Supp. 732, 747–48 (C.D.Cal.1975).

■ Thus, federal law clearly places the responsibility upon the airline to determine whether or not a pilot possesses the judgment to serve as a Pilot-in-Command. The Arbitrator usurped this responsibility. Although the federal policy of resolving labor differences by arbitration is strong, there is also a strong federal policy in ensuring the safety of air travel.[8] In weighing these

7. The duty of investigating aircraft accidents is now the responsibility of the National Transportation Safety Board (NTSB). The NTSB was created in 1966 as an agency within the Department of Transportation, but since 1975 has been an independent agency of the United States. Prior to the creation of the NTSB, aviation accident investigations were the responsibility of the Civil Aeronautics Board. *See* 49 U.S.C. §§ 1901–03 (Supp. V 1975).

8. *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 33 L.Ed.2d 583 (1974), although involving generally the arbitrability of safety issues, is inapposite to the facts before us. The dispute in *Gateway* concerned the safety of coal miners. The Court held that the dispute was covered by the

concerns, we cannot overlook the horrible toll in human life that air crashes can take.

After careful consideration of the briefs and oral argument, we hold that the District Judge has correctly balanced the competing federal interests here in determining that under these unusual circumstances, the Arbitrator exceeded his authority. We agree and, therefore, affirm.

AFFIRMED.

arbitration clause in the parties' Collective Bargaining Agreement (CBA). We are concerned, however, with the safety of the air-traveling public, who are not parties to the CBA and are unable to participate in the selection of the arbitrator. *See Gateway, supra,* at 379, 94 S.Ct. 629.