JOHNS–MANVILLE SALES
CORPORATION,
Plaintiff-Appellant,

v.

INTERNATIONAL ASSOCIATION OF
MACHINISTS, LOCAL LODGE 1609,
Defendant-Appellee.

No. 78–2367.

United States Court of Appeals,
Fifth Circuit.

July 16, 1980.

Jones, Day, Reavis & Pogue, John D. O'Brien, Jerry A. Fullmer, Washington, D. C., for plaintiff-appellant.

Crowder, Mattox & Morris, A. Don Crowder, Dallas, Tex., for defendant-appellee.

Before RUBIN and POLITZ, Circuit Judges, and SMITH *, District Judge.

ALVIN B. RUBIN, Circuit Judge:

The exemplary doctrine that an employer has a duty to provide a safe working place for its employees is here invoked to induce us to set aside an arbitration award, in direct collision with the principle that a court will not set aside an award that draws its essence from a collective bargaining agreement. Finding that the employer has, by agreement with the union representing its employees, bargained away some of its managerial prerogatives and has thus also modified its duty to its employees, we affirm the district court's refusal to set the award aside.

## I.

Johns-Manville manufactures asbestos products at a plant in Denison, Texas. The process causes tiny asbestos fibers to circulate in the air, creating health hazards to employees. Partly to conform to environmental protection and other federal standards and partly of its own concern, Johns-Manville has spent millions of dollars to reduce or eliminate the danger by installing air quality control devices and has taken other steps to reduce the air pollution in its plant and to make it as safe a place to work as possible. As a result the risks from inhalation of asbestos have been reduced to an insignificant level save for employees who continue to smoke. In the opinion of a world-renowned medical expert, smokers whose work exposes them to contaminants even at the reduced levels in such purified asbestos plants are ninety-two times more likely to die from lung cancer than non-smokers because the inhalation of tobacco smoke paralyzes the ability of the bronchial system to remove contaminants from the body. He also testified that non-smokers who work in such a purified asbestos plant run no greater risk than persons who do not work with asbestos. In this expert's opinion, the damage caused is greatest when smoking and exposure to asbestos occur at the same time or nearly the same time; therefore, smoking while on plant premises adds significantly to the carcinogenic risk.

To reduce the danger to smokers, Johns-Manville instituted a program at each of its facilities to assist them in renouncing tobacco by providing psychological support and inducements to abstinence. In addition, it adopted a rule prohibiting all smoking on company property and providing escalating disciplinary sanctions for violation of the rule. Upon the fifth violation, the penalty would be discharge.

The union protested that the imposition of this rule violated the collective bargaining agreement. Pursuant to that agreement, the dispute was submitted to arbitration. The arbitrator declared the rule invalid but held that the company "should" adopt a rule permitting smoking during work breaks in specially designated smoking areas and in separate portions of the cafeteria during meal breaks. The union stipulates that this portion of the award is mandatory and that it would accept a rule thus limited. It agrees that even this amount of smoking will enhance the smokers' danger of cancer, but contends that the award should nonetheless be enforced. It argues that confirmed smokers, such as a worker who testified that he has smoked three packs of cigarettes a day for thirty years, cannot stop smoking, that adoption of the rule will inevitably result in

* District Judge of the Northern District of Mississippi, sitting by designation.

their loss of employment and that such individuals should be permitted to expose themselves knowingly to danger. The company, it contends, has allowed smoking in most parts of the plant for twenty years, allowing smokers to develop and continue their addiction. It further argues that the collective bargaining agreement deprives the company of its formerly unlimited paternalistic authority to do what is good for the workers and that the award drew its essence from that agreement.

Each party finds some support for its position in the Occupational Safety and Health Act and the OSHA regulations. The company points to the general duty imposed on it to protect the health and safety of its employees, 29 U.S.C. § 654(a)(1), which is a requirement in addition to its duty to abide by specific standards. See Getty Oil Co. v. Occupational Safety and Health Review Commission, 530 F.2d 1143 (5th Cir. 1976). See also Advance Specialty Co., [1975–76] O.S.H.D. (CCH) ¶ 20,490; Sun Shipbuilding and Drydock Co., [1973–74] O.S.H.D. (CCH) ¶ 16,725. The union counters by observing that no regulation prohibiting smoking in asbestos plants has been adopted and that the proposed regulations would bar smoking only in specific areas where a specified concentration of asbestos fiber is present. 40 Fed. Reg. 47652, 47662 (1975).

## II.

■ National policy encourages the settlement of labor-management disputes by arbitration. 29 U.S.C. § 173(d); *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Piggly Wiggly Operators' Warehouse, Inc. v. Independent Truck Driv-*

ers Local 1, 611 F.2d 580 (5th Cir. 1980). An arbitrator's award, therefore, is not subject to judicial review except in a few instances,[1] none of which is involved here. An award must be enforced, without judicial review of the evidence, if it draws its essence from the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960); *Piggly Wiggly Operators' Warehouse, Inc. v. Independent Truck Drivers Local 1*, 611 F.2d 580, 583 (5th Cir. 1980); *Safeway Stores v. Bakery & Confectionery Workers Local 111*, 390 F.2d 79, 81 (5th Cir. 1968). The award evidently drew its substance from the collective bargaining contract, and Johns-Manville does not contend it was a mutation; its attack is on the basis that the award is contrary to public policy and should not be enforced no matter what the agreement, as interpreted by the arbitrator, provides.

■ Like a contract,[2] an arbitration award that is contrary to law will not be enforced. See *Banyard v. NLRB*, 505 F.2d 342, 347 (D.C. Cir. 1974); *Local 453, International Union of Electrical, Radio and Machine Workers v. Otis Elevator Co.*, 314 F.2d 25, 29 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963); *Glendale Manufacturing Co. v. Local 520, International Ladies' Garment Workers' Union*, 283 F.2d 936, 939–40 (4th Cir. 1960), *cert. denied*, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961); *Botany Industries, Inc. v. New York Joint Board, Amalgamated Clothing Workers*, 375 F.Supp. 485, 492 (S.D.N.Y.), *vacated as moot*, 506 F.2d 1246 (2d Cir. 1974); *Local 1852, Waterfront Guard Association v. Amstar Corp.*, 363 F.Supp. 1026, 1033 (D.Md.1973), *aff'd mem.*, 508 F.2d 839 (4th Cir. 1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975); *U.A.A. & A.I. Workers Local 985 v. W. M. Chase Co.*, 262 F.Supp. 114, 117–18 (E.D.Mich. 1966). However, the company cites no stat-

1. *See, e. g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).

2. *Hedla v. McCool*, 476 F.2d 1223, 1227 (9th Cir. 1973); *Singleton v. Foreman*, 435 F.2d 962, 969 (5th Cir. 1970); Restatement of Contracts § 598 (1932).

ute or regulation that forbids smoking in asbestos plants and no decision that denies the enforcement of a collective bargaining agreement, entered into as a result of the union's proper action in representing the members of the bargaining unit, that increases work danger inadvertently and without design.

█ It relies solely upon the public policy favoring the elimination of health hazards from the work environment, a policy embodied in judicial decisions,[3] in OSHA[4] and the regulations promulgated pursuant to it, and in the policies formulated by the federal executive agencies responsible for the public health, HEW[5] and the office of the Surgeon General.[6] While courts refuse to enforce an arbitration award that requires a violation of law,[7] only three decisions have been cited that reject an award because it conflicts with the court's view of policy rather than with a specific statute or regulation. *See World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800 (9th Cir. 1978); *Board of Trustees v. Cook County College Teachers Union*, 74 Ill.2d 412, 24 Ill.Dec. 843, 386 N.E.2d 47 (Ill.1979); *Goodyear Tire & Rubber Co. v. Sanford*, 540 S.W.2d 478 (Tex.Civ.App. 1976).

None of these three cases provides significant support for Johns-Manville's position that we should set aside the arbitrator's award on the ground that it contravenes public policy favoring the elimination of health hazards from the work environment. In the case from the Texas Court of Civil Appeals, the award hindered the reporting and prosecution of violations of the criminal law, *Goodyear Tire & Rubber Co. v. Sanford*, 540 S.W.2d 478, 484 (Tex.Civ.App. 1976), making the case closely akin to those cases refusing enforcement to awards re-

quiring or sanctioning violations of the law. The case from the Supreme Court of Illinois is even closer to the traditional exception for awards contrary to law: enforcement of the award would have benefited those teachers engaging in an unlawful strike at the expense of those not engaging in it. *Board of Trustees v. Cook County College Teachers Union*, 74 Ill.2d 412, 24 Ill.Dec. 843, 849, 386 N.E.2d 47, 53 (1979). In the case from the Ninth Circuit, the public policy contravened was one in favor of health and safety, specifically the "strong federal policy in ensuring the safety of air travel," *World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800, 803 (9th Cir. 1978), but the enforcement in that case of the award prohibiting discharge of an employee would have created a serious potential danger to the health or lives of third persons, the aircraft passengers. Smoking in asbestos plants is principally a threat to the smoker. If smoking is permitted in areas frequented by non-smokers, there is an increased danger to them, too, but this can readily be averted under the arbitrator's award by permitting access to the smoking areas only to tobacco users.

█ The danger, then, is to the smoker who willingly courts it. The issue is not merely whether these employees should stop smoking. It is whether the company should be able to discharge them if they do not, for any reason, whether lack of will power, apathy or sheer adamancy. The arbitrator found that the collective bargaining agreement denied the company this right. We are not prepared to say that his decision, itself the result of a policy favoring arbitration of labor disputes, offends a national policy against smoking in asbestos plants. If smoking in such plants should be

---

**3.** *See, e. g., Boeing Co. v. Shipman*, 411 F.2d 365, 377 (5th Cir. 1969).

**4.** 29 U.S.C. §§ 651, 654(a)(1).

**5.** Statement of Secretary Joseph E. Califano, Jr., Department of Health, Education and Welfare (April 26, 1978).

**6.** Surgeon General of the Public Health Service, Physician Advisory—Health Effects of Asbestos (April 25, 1978).

**7.** *E. g., Banyard v. NLRB*, 505 F.2d 342 (D.C. Cir. 1974); *Local 453, International Union of Electrical, Radio & Machine Workers v. Otis Elevator Co.*, 314 F.2d 25 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963).

prohibited even at the cost of employee discharge, there are governmental agencies with authority to promulgate such a rule with the force of law. Courts are not the appropriate forum for the formulation of industrial sumptuary or health-protection codes.

For these reasons, the judgment is AF-FIRMED.