**In the Matter of the Arbitration between ASSOCIATION OF PROFESSIONAL FLIGHT ATTENDANTS, Plaintiff-Appellee,**

**v.**

**AMERICAN AIRLINES, INC., Defendant-Appellant.**

**No. 84–2532.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1985.

Decided Aug. 7, 1985.

Kathleen S. King, Victor C. Thuesen, Henning, Walsh & Ritchie, San Francisco, Cal., for plaintiff-appellee.

James L. Meeder, Anthoney F. Pantoni, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant-appellant.

Before SNEED, and BEEZER, Circuit Judges, and RAFEEDIE *, District Judge.

SNEED, Circuit Judge:

American Airlines appeals the district court's order compelling arbitration of an employee's grievance pursuant to a collective bargaining agreement. We affirm.

I.

FACTS

Brian Joseph Hagerty, an employee of American Airlines (American), belongs to the Association of Professional Flight Attendants (APFA), which is the exclusive representative of American's flight attendants for purposes of collective bargaining. APFA and American observe a collective

---

\* Honorable Edward Rafeedie, United States District Judge for the Central District of California, sitting by designation.

bargaining agreement with a standard arbitration clause.[1]

Hagerty grew a beard while on vacation. When Hagerty returned from his vacation, American, in accordance with its "no beard" grooming rule applicable to flight personnel, threatened to discharge Hagerty unless he shaved his beard.

Hagerty filed a grievance requesting that American "cease and desist in future enforcement of this unreasonable company regulation prohibiting beards altogether and formulation of [sic] a more reasonable policy permitting neat, well-trimmed beards." American's Manager of Flight Services denied the grievance on the ground that "the Company has the right to maintain grooming standards with respect to public contact employees."

Thereafter followed the formal steps leading to American's refusal to arbitrate.

Following the procedures set forth in the collective bargaining agreement, APFA submitted Hagerty's grievance to the four-member System Board of Adjustment for arbitration. Prior to the convening of the four-member board, however, the parties decided that the issue was deadlocked. A hearing before a five-member System Board of Adjustment was then scheduled. This hearing was postponed at the request of APFA pending a Federal Aviation Administration (FAA) study on the effect of beards on the flow of oxygen from oxygen masks. On April 27, 1982, the FAA issued an advisory circular, which concluded in part:

> Performance testing by the industry ... has revealed that the oxygen mask-to-face seal can also be seriously compromised by the presence of facial hair....

1. The agreement provides in pertinent part:

ARTICLE 28—GRIEVANCE PROCEDURES

....

B. OTHER GRIEVANCES

1. Individual Grievances

a. *A flight attendant having a grievance concerning any action of the Company* affecting her/him may present his/her grievance in person or through her/his representative ... to the Manager of Flight Service or her/his designee, who shall evaluate the grievance and render her/his decision as soon as possible ... following the receipt of such grievance.

....

d. If the decision of the Manager of Flight Service or her/his designee is not satisfactory to the flight attendant, it may be appealed to the System Board of Adjustment, as provided for in Article 29 of this Agreement .... All submissions to the System Board of Adjustment shall be made in conformity with paragraph G of Article 29 of this Agreement.

....

7. Submission to the System Board

All submissions to the System Board of Adjustment shall be made in accordance with the provisions of Article 29 of this Agreement.

....

ARTICLE 29—SYSTEM BOARD OF ADJUSTMENT

A. STATEMENT OF PURPOSE

In compliance with Section 204, Title II, of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes which may arise under the terms of this Agreement and which are properly submitted to it, which Board shall be known as the "American Airlines Flight Attendant Systems Board of Adjustment," hereinafter referred to as the "Board."

....

D. JURISDICTION OF THE BOARD

The Board shall have jurisdiction over disputes between any employee covered by this Agreement and the Company growing out of grievances or out of interpretation or application of any of the terms of this Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by existing agreements between the parties hereto.

....

Q. STATEMENT OF EMPLOYER AND EMPLOYEE RIGHTS

Nothing herein shall be construed to limit, restrict, or abridge the rights or privileges accorded either to the employees or to the employer, or to their duly accredited representatives, under the provisions of the Railway Labor Act, as amended, and the failure to decide a dispute under the procedure established herein shall not, therefore, serve to foreclose any subsequent rights which such law may afford or which may be established by the National Mediation Board by orders issued under such law with respect to disputes which are not decided under the procedure established herein.

Agreement Between American Airlines, Inc. and the Flight Attendants in the Service of American Airlines, Inc. as Represented by the Association of Professional Flight Attendants (emphasis added).

The presence of beards and/or mustaches that affect the mask-to-face seal in crewmembers required to perform at optimum levels during flight at altitudes where supplemental oxygen is required, is not compatible with aviation safety.

Federal Aviation Administration, Advisory Circular No. 91–88, at 4–5 (1982).

On January 31, 1984, the Director of Employee Relations of American scheduled Hagerty's grievance for a hearing on March 29, 1984. American, however, subsequently refused to submit the grievance to arbitration, alleging that the challenged "no beard" rule concerns an air passenger safety issue which is not subject to resolution by labor arbitration. At that point, APFA went to court. A petition in federal district court to compel arbitration was filed. On August 28, 1984, the district court entered an order compelling arbitration of the dispute. American appeals that order.

## II.

## DISCUSSION

The relationship of APFA and American here applicable is governed by the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq*, which was extended to air carriers by enactment of Title II of the RLA, 45 U.S.C. § 181 *et seq*. The RLA establishes procedures for the settlement of disputes which fall within its coverage. *See Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 722–28, 65 S.Ct. 1282, 1289–92, 89 L.Ed. 1886 (1945). To resolve minor disputes between the carriers and their employees, those which grow "out of grievances, or out of the interpretation or application of agreements concerning ... rules or working conditions," the RLA requires air carriers and their employees, acting through their representatives, to establish boards of adjustment for arbitration. *See* 45 U.S.C. § 184 (1982); *Elgin*, 325 U.S. at 723–28, 65 S.Ct. at 1289–92.

We have recognized that "arbitration is the preferred means for settlement of labor disputes." *World Airways, Inc. v. International Brotherhood of Teamsters*, 578 F.2d 800, 802 (9th Cir.1978). Further, the Supreme Court tells us that an order to arbitrate a particular grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 377–78, 94 S.Ct. 629, 637, 38 L.Ed.2d 583 (1974) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Here, the pertinent arbitration clause provides that "[a] flight attendant having a grievance concerning *any* action of the Company" is entitled to submit the grievance to arbitration (emphasis added).[2] The breadth of this provision supports APFA's assertion that it covers the instant grievance. This is particularly true in view of the fact that "doubts as to whether a particular dispute is arbitrable should be resolved in favor of arbitration." *See Laborers International Union Local 252 v. Town Concrete Pipe of Washington, Inc.*, 680 F.2d 1284, 1285 (9th Cir.), *cert. denied*, 459 U.S. 1039, 103 S.Ct. 453, 74 L.Ed.2d 606 (1982).

American argues that the FAA Advisory Circular No. 91–8B, which suggests that "[p]ilots and other crewmembers operating at altitudes where supplemental oxygen may be required should not have a beard or mustache that will interfere with proper mask-to-face seal," Federal Aviation Administration, Advisory Circular No. 91–88, at 5 (1982), places the wearing of beards beyond the scope of an arbitrator's review. The report does indicate that the wearing of beards has some safety implications. It does not, however, prohibit the wearing of beards by flight attendants. Nonetheless, American asserts that "it is the duty of the carrier to determine the competency of its [personnel] in the interests of public safety." *See World Airways*, 578 F.2d at 803.

**2.** *See supra* n. 1.

American concludes that because beards raise safety concerns, the issue of whether flight attendants should be allowed to wear beards is not subject to arbitration.

American relies primarily on *World Airways*. There we affirmed a district court order vacating an arbitration award that ordered World Airways to retrain a pilot-in-command demoted by the airline for repeated judgmental mistakes. *See* 578 F.2d at 802. American expands *World Airways* to preclude arbitration of any grievance that involves air passenger safety issues.

*World Airways* does not reach that far. It properly recognizes that there is a strong policy of ensuring the safety of air travel. *See id.* at 803. However, it does not preclude an arbitrator from ever dealing with a labor dispute that may involve air safety. Unlike the instant case, the safety dispute in *World Airways* did go before an arbitrator. The court found, however, that the arbitrator, in fashioning his award of retraining, "exceeded his authority and usurped a responsibility of the airline under Federal aviation law." *World Airways*, 578 F.2d at 801. That is, it was the remedy ordered that went beyond the arbitrator's authority, not the mere consideration of the safety issue. A less intrusive remedy might well have fared differently.

We recognize that the wearing of beards by flight attendants could have safety implications. But because we are uncertain about the nature and scope of such implications, we believe it appropriate that a record be developed by arbitration. *See Connecticut Light & Power Co. v. Local 420, International Brotherhood of Electrical Workers*, 718 F.2d 14, 19 (2d Cir. 1983) ("Arbitrators ... have the primary responsibility for interpreting [collective bargaining] agreement[s].") Should the arbitrator's decision exceed the scope of his authority or be inconsistent with federal aviation law, judicial review is available. *See, e.g., World Airways*, 578 F.2d at 804.

The order of the district court compelling arbitration is AFFIRMED.