794 F.2d 915
 122 L.R.R.M. (BNA) 3047
 DISTRICT 2A, TRANSPORTATION, TECHNICAL, WAREHOUSE,
INDUSTRIAL & SERVICE EMPLOYEES UNION, affiliated with
District 2, Marine Engineers Beneficial
Association-Associated Maritime Officers, AFL-CIO, Appellant
v.
GOVERNMENT OF THE VIRGIN ISLANDS.
 No. 86-3155.
 United States Court of Appeals,
Third Circuit.
 Argued June 17, 1986.
Decided July 11, 1986.
Rehearing and Rehearing In Banc Denied Aug. 13, 1986.
 
 Robert J. Ambrogi (Argued), Charlotte Amalie, St. Thomas U.S. Virgin Islands, Joel C. Glanstein, O'Donnell & Schwartz, New York City, for appellant.
 Alan D. Smith (Argued), Asst. Atty. Gen., Charlotte Amalie, St. Thomas U.S. Virgin Islands, for appellee.
 James M. Altman, Stephen Burrow, Schulman & Altman, New York City, for amicus curiae, UIW.
 Before SEITZ, HUNTER, and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 District 2A, Transportation, Technical, Warehouse, Industrial and Service Employees Union ("District 2A" or "Union") appeals the district court's grant of the Government of the Virgin Islands' motion for summary judgment. Jurisdiction before the District Court of the Virgin Islands was based on V.I.Code Ann. tit. 24, Sec. 383(a) (Supp.1985) and V.I.Code Ann. tit. 4, Sec. 32 (Supp.1985). We have appellate jurisdiction pursuant to 28 U.S.C. Secs. 1291, 1294 (1982).
 
 I.
 
 2
 District 2A is the certified collective bargaining agent for supervisors employed by the Virgin Islands government. The Union and the government are parties to a collective bargaining agreement effective October 1, 1980, which is still in force by the parties' stipulation. According to the agreement's terms, the parties were to enter salary negotiations for fiscal year 1983, which began on October 1, 1982. Unable to negotiate a wage agreement, the parties voluntarily submitted the matter to binding interest arbitration[1] pursuant to the impasse arbitration procedures contained in the Public Employee Labor Relations Act ("Act"), V.I.Code Ann. tit. 24, Secs. 361-383 (Supp.1985).[2]
 
 
 3
 A three member arbitration panel considered the issue in October 1984. Because of the late date of the arbitration, the parties also presented the issue of supervisors' salaries for fiscal year 1984. On February 1, 1985, the panel issued an award. For fiscal year 1983, the award set a three and one-half percent salary increase and a one-step pay scale advancement. The award stated that the new salaries should be implemented within sixty days, and that the government should pay the amount representing the retroactive increase in four installments. For fiscal year 1984, the panel awarded a lump-sum payment of one thousand dollars for each Union member.
 
 
 4
 The government was unable to fulfill the terms of the award immediately. On September 19, 1985, the Governor of the Virgin Islands introduced a bill that would authorize him to negotiate a thirty-five million dollar loan, part of which would be used to satisfy outstanding arbitration awards against the government. The Legislature did not enact the bill and the government has not satisfied the award to date.
 
 
 5
 On August 22, 1985, District 2A filed a motion to enforce the award in the District Court of the Virgin Islands. The Union filed a request for a preliminary injunction to prevent the government from refusing to comply with the award on August 28. Some time passed without the government's response; when it became evident that the Virgin Islands Legislature was not going to enact legislation empowering the Governor to enter into a loan agreement, the Union moved for summary judgment. On December 19, 1985, the government filed an answer and a motion for summary judgment in district court. The government argued below, as it does here, that it was entitled to judgment because the Legislature had failed to appropriate funds to honor the award as required by the Public Employee Labor Relations Act. In an Order dated January 30, 1986, the district court accepted the government's interpretation of the Act and granted its motion for summary judgment.
 
 
 6
 Sometime after the commencement of District 2A's suit, Amicus United Industrial Workers ("UIW") filed a complaint in the District Court of the Virgin Islands seeking enforcement of a similar arbitral award. The government in that action informed the court of its intention to rely on the defense it raised in District 2A's suit and that District 2A had appealed the January 30 Order to this court. The parties have agreed to a stay pending the disposition of the instant appeal.
 
 II.
 
 7
 This appeal presents us with a question of statutory construction. As such, our review is plenary. See Chrysler Credit Corporation v. First National Bank and Trust Company of Washington, 746 F.2d 200, 202 (3d Cir.1984). We must define the relationship between two sections of the Virgin Islands Public Employee Labor Relations Act.
 
 
 8
 The first, Sec. 374, addresses the right of collective bargaining representatives to negotiate terms of employment with the government, and outlines the scope of the matters that may be negotiated and the limitations on the public employees' collective bargaining rights. In particular, this section reserves the Virgin Islands Legislature's power to approve labor agreements under certain circumstances:Notwithstanding any other provision of this chapter, no contract or other instrument of agreement between an exclusive representative and a public employer which contract or instrument requires the appropriation of funds by the Legislature shall be binding as to the terms requiring appropriations until such appropriations are enacted.
 
 
 9
 V.I.Code Ann. tit. 24, Sec. 374(h).
 
 
 10
 The second provision involved in this dispute, Sec. 376, details the impasse procedure.[3] In general, the section provides for the appointment of a mediator by the Public Employee Relations Board at the request of a party when negotiations break down. If the mediator is unsuccessful in facilitating a voluntary resolution, the dispute then must be submitted to final and binding arbitration. The parties may also agree to submit the dispute directly to arbitration without first resorting to mediation, as in the instant case. See V.I.Code Ann. tit. 24, Sec. 376(a)(4). After the arbitration panel renders its award, the section requires the parties to "take whatever action is necessary to carry out and effectuate the decisions." Id., Sec. 376(a)(5).
 
 
 11
 District 2A argues that the two sections must be read separately, such that the Virgin Islands Legislature's power to approve public employee labor contracts extends only to those contracts that are the product of direct negotiations. We decline this invitation. We have previously construed the Public Employee Labor Relations Act in light of case law interpreting national labor law and policy. See Virgin Islands Nursing Association v. Schneider, 668 F.2d 221 (3d Cir.1981). A fundamental tenet of statutory interpretation, applicable to labor statutes, is that courts should endeavor to interpret the statute as a whole where possible. Thus, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Mastro Plastics Corporation v. Labor Board, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (construing the National Labor Relations Act).
 
 
 12
 We hold that Sec. 374 and Sec. 376 should be read in conjunction. The Act structures the employer-employee relationship by permitting parties who have exhausted negotiations to submit to arbitration.[4] Although the arbitration award is final and binding on the parties, the award does not bind the Legislature. Two provisions compel this conclusion. The Act defines "employer" as "the executive branch of the Government of the Virgin Islands and any agency or instrumentality thereof." V.I.Code Ann. tit. 24, Sec. 362(i). Thus, while the executive branch must honor the award, as a party to the arbitration award, the same cannot be said of the Legislature. Second, the Legislature explicitly reserved its power of approval over all "instruments of agreement" in Sec. 374(h), "notwithstanding" any other provision in the Act. Clearly, an arbitrator's award must be subject to legislative approval to the extent it requires the appropriation of funds.
 
 
 13
 Moreover, we find a legislative "veto" over certain labor agreements consonant with the Act's policy. Section 361 describes the purposes behind the Act as follows:
 
 
 14
 It is the purpose of this chapter to provide for the orderly and constructive relationships between public employers and their employees. The Legislature finds and declares that the Government of the Virgin Islands shall fully accept the principle and procedure of collective bargaining and shall bargain in good faith with valid public employee organizations, subject, however, to the paramount right of the citizens of this Territory to keep inviolate the guarantees for their health, safety and welfare.
 
 
 15
 (emphasis added). The Legislature's reservation of a right of final approval over arbitration awards that require the expenditure of public funds is consistent with the Act's concern that the public welfare prevail over the public employees' collective bargaining rights when the two conflict.
 
 
 16
 District 2A and the UIW raise three challenges to this interpretation. Both contend that Sec. 374(h) cannot apply to an arbitration award because the award is not a "contract or other instrument of agreement." The unions also suggest that the term "binding arbitration" in Sec. 376 necessarily requires the Legislature to appropriate funds to honor arbitration awards. Finally, District 2A alleges that an arbitration award is not subject to Sec. 374(h) because such awards do not mandate the appropriation of funds. We shall address these arguments in turn.
 
 
 17
 Appellant argues forcefully that an arbitral award cannot be characterized as a contract or instrument of agreement because the parties do not agree to the award's terms in the conventional sense. Instead, District 2A maintains that the award is imposed on the employees and employer by a third party. According to this view of the arbitration process, the Union suggests that the Legislature intended that Sec. 374(h) apply only to agreements that result from face-to-face collective bargaining negotiations. Amicus's brief echoes this theory, asserting that the mutual consent necessary for a contract or instrument of agreement is lacking when the parties engage in final and binding arbitration.
 
 
 18
 We disagree with this view of the arbitration procedure. Federal labor law views arbitration as an extension of the collective bargaining process rather than an alternative to bargaining. See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Although fashioned by a third party, the award is nonetheless a product of collective bargaining and, as such, a contract or instrument of agreement within the meaning of Sec. 374(h).[5]
 
 
 19
 The UIW and District 2A suggest that the legislative power over appropriations necessary to facilitate an arbitration award is inconsistent with the Act's impasse arbitration procedure. We disagree. It is axiomatic that an arbitration award can bind only the parties to the arbitration. The Act's definition of "employer" leads us to conclude that the award is final and binding only on the executive branch. Thus Sec. 376's arbitration procedure award by itself cannot require the Legislature to authorize the necessary expenditures. The Legislature's reservation of the power to approve certain awards through Sec. 374(h) merely makes explicit that which is implicit in Sec. 376.
 
 
 20
 Finally, District 2A contends that an arbitration award pursuant to Sec. 376 does not require the Legislature to appropriate funds because the Legislature has delegated its authority to prescribe salary rates for government employees and to appropriate the necessary funds to the arbitration panel. In support, the Union notes that courts have defined interest arbitration between local governments and public employees as a means of delegating the legislative authority to prescribe salaries. See, e.g., Carofano v. City of Bridgeport, 196 Conn. 623, 495 A.2d 1011 (1985); City of Amsterdam v. Helsby, 37 N.Y.2d 19, 371 N.Y.S.2d 404, 332 N.E.2d 290 (1975); City of Biddeford v. Biddeford Teachers Association, 304 A.2d 387 (Me.1973); Harney v. Russo, 435 Pa. 183, 255 A.2d 560 (1969). These cases discuss the issue of the power of state legislatures to bind city and municipal authorities to arbitration awards, however, and do not address the question in the instant case. In any event, "[t]o establish salaries is not to appropriate funds for them." Town of Arlington v. Board of Conciliation & Arbitration, 370 Mass. 769, 776, 352 N.E.2d 914, 920 (1976). Our construction of the statute convinces us that the Act does not delegate the power to appropriate funds to pay government employees to the arbitration panel. The Act simply directs the government, in its capacity as an employer, to pay a salary set by the arbitration panel subject to the Legislature's final approval.
 
 III.
 
 21
 For the foregoing reasons, we will affirm the judgment of the district court.
 
 
 
 [1]
 "Interest arbitration" is arbitration concerning new contract terms, as distinguished from "grievance arbitration," which involves disputes over the meaning and application of an existing collective bargaining agreement. See International Brotherhood of Electrical Workers, Local No. 367 v. Graham County Electric Cooperative, Inc., 783 F.2d 897, 899 (9th Cir.1986)
 
 
 [2]
 Section 376(a) contains the impasse procedure, which provides, in pertinent part:
 Sec. 376. Impasse procedure, mediation and arbitration
 (a) Whenever an impasse procedure is required by the provisions of this chapter, the following procedure shall be followed:
 (1) the parties shall submit to the PERB [Public Employees Relations Board] and to each other written statements clearly and concisely outlining the issues in dispute together with a certificate as to the good faith of the statements;
 (2) the PERB shall assist the parties in voluntarily resolving the disputes;
 (3) upon request of either party, or upon its own motion, the PERB shall submit the unresolved issues to a mediator selected by the PERB from a list of qualified mediators chosen pursuant to subsection (k) of section 365 of this chapter. The mediator shall be chosen within 3 days after being requested by either party. The mediator shall have 14 days after his appointment in which to achieve a voluntary resolution of the disputed issue;
 (4) if no voluntary resolution is achieved by the mediator within the time provided, or if the mediator declares earlier than the expiration of the time provided that a voluntary resolution is not likely, then the remaining issues in dispute shall be submitted by the mediator to an arbitration panel for a decision which shall be final and binding on the parties. The parties may mutually agree to submit the dispute to the final and binding decision of an arbitration panel prior to the appointment of a mediator, and if so agreeing, shall notify the PERB;
 (5) an arbitration panel shall be selected promptly, consisting of three members. One member shall be appointed by the public employer, one member shall be appointed by the exclusive representative, and the third shall be selected by the other two.... The arbitration panel shall, within ten calendar days after its formation, commence to hear the issues in dispute by taking whatever actions it deems necessary to fairly investigate, hear, determine, and decide the disputed issues. The arbitration panel shall have the power to subpoena witnesses and documents and administer oaths. On or before thirty days after the date of its formation, the arbitration panel shall deliver its decisions in writing to the public employer, the exclusive representative, and the PERB. The panel's decision shall be final and binding on both parties to the dispute and the parties shall immediately take whatever action is necessary to carry out and effectuate the decisions.
 
 
 [3]
 See supra note 2
 
 
 [4]
 Certain public employees, designated as "Class III," do not have the right to strike. For these employees, binding arbitration is mandatory when negotiations and mediation fail. See V.I.Code Ann. tit. 24, Secs. 371(a), 375(c). District 2A is not designated as Class III bargaining unit
 
 
 [5]
 One commentator has noted that most public employee arbitration statutes provide the parties with a measure of control over the selection of the "neutral" member of the arbitral panel, "reflect[ing] a clear underlying theme that views arbitration as an extension of the collective bargaining process." Grodin, Political Aspects of Public Sector Interest Arbitration, 64 Calif.L.Rev. 678, 681 n. 15 (1976). This is precisely the case in the Virgin Islands. See V.I.Code Ann. tit. 24 Sec. 376(a)(5), supra note 1