NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2061
_____

SUMMIT SHEET METAL, LLC,
                                        Appellant

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION
LOCAL UNION NO. 44
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-13-cv-01623)
District Judge:  Hon. A. Richard Caputo
_____

Submitted Under Third Circuit LAR 34.1(a)
November 17, 2014

Before:  RENDELL, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed: November 19, 2014)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Summit Sheet Metal, LLC ("Summit" or the "Company"), appeals the orders of the United States District Court for the Middle District of Pennsylvania denying its motion to remand and granting summary judgment in favor of Sheet Metal Workers' International Association Local Union No. 44 ("Local 44"). We will affirm.

## I.    Background

Summit and Local 44 entered into a collective bargaining agreement ("the Agreement"), which took effect on August 8, 2011. The initial term of the Agreement ended April 30, 2013, but Article XV of the Agreement ("the extension clause") provided that it would "continue in force from year to year thereafter unless written notice of reopening [was] given not less than ninety (90) days prior to the expiration date." (App. at 44.) The extension clause further provided that, if notice of reopening was given, the Agreement would remain in force during the collective bargaining process and during any subsequent arbitration proceedings undertaken pursuant to Article X, Section 8 of the Agreement ("the interest arbitration clause").[1] The Agreement further stated that Summit "waives any right it may have to repudiate this Agreement during the term of this Agreement, or during the term of any extension, modification or amendment to this

---

[1] "Interest arbitration" is arbitration over the terms of a new agreement, in contrast to "grievance arbitration" or "rights arbitration," which is arbitration over the meaning and application of an existing agreement. *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 817 n.5 (3d Cir. 2004); *Dist. 2A, Transp., Technical, Warehouse, Indus. & Serv. Emps. Union v. V.I.*, 794 F.2d 915, 916 n.1 (3d Cir. 1986).

Agreement." (App. at 44.) However, the letter of assent by which Summit and Local 44 entered into the Agreement contained the following non-renewal provision:

> If the undersigned Employer does NOT intend to renew this assent, he shall so notify the Local Union in writing at least thirty (30) days prior to the termination date.

(App. at 63.)

On January 8, 2013, Local 44 notified Summit that it intended to reopen the Agreement. Summit responded by notifying Local 44 that it did not intend to renew its assent to the Agreement. Local 44 wrote Summit a letter stating that it had no intention of terminating the Agreement and proposing several dates to negotiate a renewal. When Summit did not respond to that letter or a second one attempting to start negotiations, Local 44 invoked the procedures outlined in the interest arbitration clause, and it unilaterally submitted the dispute to the National Joint Adjustment Board for the Sheet Metal Industry ("NJAB") for binding arbitration. Summit notified NJAB that it did not intend to participate. On June 24, 2013, NJAB issued a unanimous decision ordering Summit to immediately execute a new collective bargaining agreement, altering the effective date but otherwise adopting terms identical to the initial Agreement.

Before Local 44 brought NJAB into the picture, however, Summit had filed a declaratory judgment action in state court. Local 44 removed the case to federal court, and the District Court denied Summit's motion to remand. On August 5, 2013, Local 44 filed a complaint in federal court seeking to enforce the NJAB decision. The two cases were consolidated, and the parties filed cross-motions for summary judgment. The District Court denied Summit's motion and granted Local 44's, ruling that the interest

3

arbitration clause bound Summit to arbitrate despite its invocation of the non-renewal clause. The District Court therefore ordered compliance with the terms of the NJAB decision.[2] Summit timely appealed.

## II.    Discussion[3]

Summit first challenges the District Court's denial of its motion to remand the case to state court. It argues that the District Court lacked subject matter jurisdiction because the Agreement was not in force at the time Summit filed the action.

Section 301 of the Labor Management Relations Act provides federal jurisdiction over certain labor contract disputes:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

---

[2] The District Court ruled, however, that any extension clause and interest arbitration clause in the renewed agreement would be unenforceable as non-mandatory subjects of collective bargaining that may only be imposed by explicit mutual consent.

[3] We have jurisdiction pursuant to 28 U.S.C. § 1291. *See Albright v. R.J. Reynolds Tobacco Co.*, 531 F.2d 132, 134 (3d Cir. 1976) ("A denial of a motion to remand is properly reviewable on appeal from a final judgment."). Summit's motion to remand was premised on the argument that the District Court lacked subject matter jurisdiction. Therefore, we exercise plenary review over the District Court's denial of that motion. *See Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 279 (3d Cir. 2013) ("Whether subject matter jurisdiction exists is a legal question over which we exercise plenary review." (internal quotation marks omitted)). Similarly, we exercise plenary review over the District Court's summary judgment rulings. *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014). A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

29 U.S.C. § 185(a). "By its terms, this provision confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 656 (1998) (29 U.S.C. § 185(a)).

Summit's declaratory judgment action constitutes a suit for a violation of a contract. In its complaint, Summit alleged that Local 44's actions in attempting to renew the Agreement were "unlawful, illegal, actionable and enjoinable." (App. at 31.) The Company asked the state court to "interpret the terms of the agreement" and sought an order "enforcing the terms of the collective bargaining agreement." (*Id.*) In other words, Summit sought a declaration that Local 44's attempt to invoke interest arbitration violated the non-renewal clause. The District Court thus had jurisdiction under § 301 to resolve the dispute.[4]

Next, Summit contends that its declaratory judgment action involves state-law claims that are not preempted by § 301. It argues that state law grants it an "absolute legal right and privilege … to unilaterally refuse to enter into a renewal collective

---

[4] Summit also argues that the District Court lacked jurisdiction because the Company was not "engaged in interstate commerce." (Appellant's Br. at 9, 17.) But § 301 requires employers to be "in an industry affecting commerce," 29 U.S.C. § 185(a), which the statute defines as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce," *id.* § 142(1). *See id.* § 152(6) (defining commerce as "trade, traffic, commerce, transportation, or communication among the several States …"). Even assuming that being "engaged in interstate commerce" and being "in an industry affecting commerce" amount to the same thing, Summit has cited no record evidence to support its argument.

bargaining agreement," and that preempting such rights would violate the Tenth Amendment of the United States Constitution. (Appellant's Br. at 11-13.)

"[T]he pre-emptive effect of § 301 … extend[s] beyond suits alleging contract violations" and includes "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 213 (1985). Summit has cited no authority for its assertion of rights granted by state law. Nor has it made any attempt to demonstrate that such rights exist independent of, and thus cannot be waived or altered by, the Agreement. The Federal Rules of Appellate Procedure state that an appellant's brief "must contain" the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8). "It is well settled that if an appellant fails to comply with these requirements on a particular issue, the appellant normally has abandoned and waived that issue on appeal and it need not be addressed by the court of appeals." *Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993); *see also Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006) ("[P]assing and conclusory statements do not preserve an issue for appeal."). We therefore do not address this argument further.

Finally, Summit contends that a genuine dispute of material fact exists that should have precluded summary judgment in favor of Local 44. In particular, the Company points to an affidavit offered by its president indicating that the parties understood the non-renewal provision to allow Summit the right to unilaterally withdraw its assent, with the appropriate notice, if continuing under the Agreement was not financially possible.

6

That argument is unavailing because there is no factual dispute. The District Court accepted Summit's characterization of the parties' intent, noting that the affidavit was "consistent with the terms of the parties' agreement, which provides that Summit could revoke its assent to the collective bargaining agreement as set forth in the Letter of Assent." (App. at 24.) The District Court even treated the initial Agreement as having been terminated by Summit's notice of non-renewal. But the Court concluded that the Company was not entitled to judgment as a matter of law on the ground that the obligation to arbitrate survived termination of the Agreement.

The extent of Summit's challenge to the District Court's legal conclusion consists of a single sentence, located in the portion of its brief addressing subject matter jurisdiction: "[T]he Third Circuit and seven (7) other Circuit Courts of Appeal have not accepted Local #44's interpretation of Section 301 as to whether [an interest arbitration clause] survives a notice of termination." (Appellant's Br. at 18.) Summit does not cite any authority or develop this argument in any way, and that is untenable. An appellant must do more to advance an argument on appeal. Fed. R. App. P. 28(a)(8); *Doeblers' Pa. Hybrids*, 442 F.3d at 821 n.10; *Kost*, 1 F.3d at 182. Therefore, any challenge to the actual basis of the District Court's summary judgment ruling has been waived.[5]

_____

[5] A circuit split does indeed exist on the question of whether a party is required to submit to interest arbitration despite the existence and invocation of a non-renewal provision, but we have not weighed in on the issue. *Compare M.K.&O. Transit Lines, Inc. v. Div. No. 892, Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am.*, 319 F.2d 488, 492 (10th Cir. 1963) ("Since there was such notice of termination the contract had come to an end upon the expiration of the old term. To say that the obligation to arbitrate new terms and conditions would continue with the same result as if the contract were not so terminated would be to deny any effect whatever to the right of

7

### III. Conclusion

For the foregoing reasons, we will affirm the orders of the District Court denying Summit's motion to remand and granting Local 44's motion for summary judgment.

---

termination which each party reserved."), *with Local Union No. 666, Int'l Bhd. of Elec. Workers, AFL-CIO v. Stokes Elec. Serv., Inc.*, 225 F.3d 415, 421-24 (4th Cir. 2000) (interpreting agreement to require parties to submit to interest arbitration despite notice of desire to terminate), *Local Union 257, Int'l Bhd. of Elec. Workers, AFL-CIO v. Sebastian Elec.*, 121 F.3d 1180, 1182, 1185 (8th Cir. 1997) (characterizing employer's attempt to terminate collective bargaining agreement as "'illegal,'" despite a letter of assent referring to a right to terminate, and concluding that the employer was bound to submit to interest arbitration), *and Int'l Bhd. of Elec. Workers, Local No. 367, AFL-CIO v. Graham Cnty. Elec. Coop., Inc.*, 783 F.2d 897, 899-900 (9th Cir. 1986) (attempting to distinguish the Tenth Circuit's ruling in *M.K.&O. Transit Lines* on the basis of possible differences in the governing instruments).  Given Summit's waiver of the argument, we have no occasion to decide the issue today.