**PAINTERS LOCAL UNION # 171 INTERNATIONAL BROTHERHOOD OF PAINTERS & ALLIED TRADES, AFL–CIO, an unincorporated association, Plaintiff-Appellee,**

v.

**WILLIAMS & KELLY, INC., a California Corporation and American Employers' Insurance Company, a Massachusetts Corporation, Defendants-Appellants.**

No. 78–1140.

United States Court of Appeals, Tenth Circuit.

Submitted July 19, 1979.

Argued Aug. 7, 1979.

Decided Sept. 7, 1979.

Martin D. Buckley, of Hornbein, MacDonald & Fattor, Denver, Colo., for plaintiff-appellee.

James E. Brown, of Grant, McHendrie, Haines & Crouse, Denver, Colo. (Donald B. Gentry, Denver, Colo., with him on the brief), for defendants-appellants.

Before SETH, Chief Judge, HOLLOWAY and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Williams & Kelly, Inc. and American Employers Insurance Company (American)[1] appeal from an adverse judgment entered in favor of Painters Local Union # 171, International Brotherhood of Painters & Allied Trades, AFL–CIO (Union).

Union filed this action against Williams & Kelly, a California painting contractor working on a job at Fort Carson, a military base located near Colorado Springs, Colorado, to enforce an arbitration award. American was also sued inasmuch as it had furnished a payment bond to Union covering the wages and fringe benefit payments required by Williams & Kelly under the collective bargaining agreement with Union. American had originally issued a $1,000 bond on June 12, 1975 to secure the payments. Thereafter, in July, 1976, American issued a rider to the original bond increasing it to $3,000 effective June 12, 1976. A summary of the dispositive factual background should facilitate our review.

In early 1976 a dispute arose between Williams & Kelly and Union over the application of two clauses in the collective bargaining agreement, i. e., first, whether Williams & Kelly had violated a clause requiring it to hire 75% local employees and 25% California employees (75–25 clause), and,

---

1. Hereinafter collectively referred to as appellants.

second, whether the Colorado Springs wage scale or the California wage scale applied in determining the amount to be paid employees applying epoxy.

These disputes were submitted to a joint committee established by the collective bargaining agreement. On January 26, 1976, the joint committee entered its decision finding and concluding: (1) Williams & Kelly had violated the 75–25 clause and "Williams & Kelly cannot work two (2) California men without first employing six (6) Local Union 171 members in this jurisdiction"; and (2) Williams & Kelly was obligated to pay premium time of time and one half for epoxy applicators. Under this portion of the decision, Williams & Kelly was obligated to pay Wolfgang Hess an additional $213.30 and Michael Bane an additional $391.50.

Pursuant to the collective bargaining agreement, Williams & Kelly appealed the decision of the joint committee to an arbitrator. An arbitration hearing date was scheduled and thereafter rescheduled several times prior to a hearing conducted on July 26, 1976. Although Williams & Kelly did not request a continuance of the hearing in writing, it did, through an employee, orally request a continuance. This request was denied by the arbitrator because of scheduling conflicts. The hearing was held with Williams & Kelly absent.

In rendering an opinion and entering an award the arbitrator held, in affirming the joint committee, that Williams & Kelly had violated the 75–25 clause and that Hess and Bane were entitled to back wages of $213.30 and $391.50, respectively, plus fringe benefits. The arbitrator also held that Ava Marta, the senior local employee entitled to work during the time in question that Williams & Kelly had violated the 75–25 clause, was entitled to receive $2,397.88 in back pay, plus fringe benefits.

Williams & Kelly thereafter refused to comply with the arbitrator's award, and Union filed this action pursuant to 29 U.S.C.A. Sec. 185(a) and 9 U.S.C.A. Sec. 9 seeking to enforce the award. In entering judgment for Union, the court held that the arbitrator did not err in refusing to grant the request of Williams & Kelly for a continuance. The court also affirmed the arbitrator's awards of $2,397.88 to Marta, $213.30 to Hess, and $391.50 to Bane, and awarded Union fringe benefit payments of $223.48, attorney fees of $600, and $346.48 representing one-half of the arbitration expenses. The judgment totaled $4,172.64. The court ordered American to pay $3,000 representing "the amount of exposure of . . . American . . . under the bond and rider thereto".

On appeal, appellants contend: (1) The court erred in finding that the arbitrator did not abuse his discretion in refusing to grant a continuance; (2) the arbitrator erred in awarding Marta back pay; (3) the court erred in awarding attorney fees; and (4) the court erred in assessing American's liability at $3,000.

## I.

Appellants contend the court erred in finding that the arbitrator did not abuse his discretion in refusing to grant a continuance. In considering this issue the court observed:

> The arbitrator selected the date of July 26, 1976, but there was, apparently, some further telephone contact between the arbitrator and the employer about that date with, apparently, a request that it be changed, or at least that's asserted, and the arbitrator did not change the date.
>
> There's no question that the employer knew that the arbitrator's position was that the hearing was going to take place on July 26, 1976, and that the employer didn't show up and did not formally, that is to say, in writing, request any continuance or change of that date, and it's my view that the failure of the employer to appear at the time and place set forth for the arbitration and object to the hearing going forward is a waiver, and that they were in default, and they are accordingly bound by the results of the arbitration hearing, which they did not attend.

[R. Vol. II, p. 2–3.]

It is uncontested that the arbitrator, by letter of June 15, 1976, confirmed July 26, 1976 as the arbitration date. Williams & Kelly thereafter had in excess of five weeks to prepare for the hearing or submit written requests for continuance or objection to the hearings. A party to an arbitration proceeding conducted pursuant to a collective bargaining agreement, such as Williams & Kelly, is not entitled to a postponement merely by requesting one. *Local Union No. 251 v. Narragansett Improvement Company,* 503 F.2d 309 (1st Cir., 1974). The facts herein support the court's finding that a continuance was not granted because of scheduling conflicts, and not because the arbitrator was guilty of misbehavior or misconduct. Thus, we hold that the court did not err in finding that the arbitrator did not abuse his discretion in refusing to grant a continuance. This result is, we believe, consistent with our holding in *Local Union No. 2–477, Oil, Chemical and Atomic Workers, International Union v. Continental Oil Company,* 524 F.2d 1048 (10th Cir. 1975) *cert. denied,* 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976) in which we held that an arbitration award is not defective merely because a party exercises his prerogative not to attend the hearings.

## II.

Williams & Kelly contend that the arbitrator erred in awarding Marta back pay, and that by so doing, he exceeded his jurisdiction and went beyond the scope of the issues submitted by the parties. In considering this argument, we deem it noteworthy that Williams & Kelly does not challenge the arbitrator's finding that it violated the 75–25 clause. We accordingly assume the validity of that finding. We are not empowered to review the merits of an arbitration award which draws its essence from a collective bargaining agreement. *Mistletoe Express Service v. Motor Expressmen's Union,* 566 F.2d 692 (10th Cir. 1977). Furthermore, courts favor an arbitrator's exercise of broad discretion in fashioning remedies, providing that the award draws its essence from the collective bargaining

agreement and the arbitrator has limited himself to interpretation and application of the agreement. *Campo Machining Co., Inc. v. Local Lodge No. 1926 etc.,* 536 F.2d 330 (10th Cir. 1976).

Applying these rules, we hold that the arbitrator properly awarded Marta back pay. To hold otherwise would be to endorse the proposition that Williams & Kelly could unilaterally violate a contractual provision of a collective bargaining agreement with impunity. We cannot adopt an interpretive position in derogation of the collective bargaining agreement, particularly when, as here, the arbitrator's finding of a violation is not challenged.

## III.

Williams & Kelly contend that the court erred in awarding Union attorney fees of $600. We agree.

In *Alyeska Pipe Line Service Co. v. The Wilderness Society* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) the Court stated that, as a general rule, absent statutory authority or an enforceable contract, litigants pay their own attorney fees. The Court did acknowledge that courts may assess attorney fees for the wilful disobedience of an order or when the losing litigant has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Furthermore, the *Alyeska* opinion holds that the ability to assess attorney fees in such circumstances is an inherent power of the court unless forbidden by Congress.

We are convinced, following a review of the record in the case at bar, that the general rule is applicable. Accordingly, we hold that Williams & Kelly and Union must account for their respective attorney fees. Union does not contend that there exists any actions by Williams & Kelly which can be construed as wilful disobedience of the court or proceeding in bad faith, vexatiously, wantonly or for oppressive reasons. Our review does not disclose any. Thus, we cannot accept Union's contention that the refusal of Williams & Kelly to abide the decision of the arbitrator was, in and of

itself, evidence of bad faith, vexatious and wanton conduct. The award of the attorney fees must be set aside.

### IV.

Appellants contend the court erred in assessing American's liability at $3,000. As noted, *supra,* American originally issued a payment bond for Williams & Kelly in the amount of $1,000. Thereafter, subsequent to the actions giving rise to the disputes herein, but prior to the entry of the arbitrator's award on July 30, 1976, the amount of the bond was increased to $3,000. Appellants argue that a surety's liability extends prospectively only, and that the increased coverage could only extend to "acts and defaults" occurring subsequent to the effective date of the rider which increased the coverage to $3,000.

Suretyship has generally been defined as "a contractual relation resulting from an agreement whereby one person, the surety, engages to be answerable for the debt, default or miscarriage of another, the principal." 74 Am.Jur.2d, Suretyship, § 1 (1974). In the absence of special provisions in the contract, the liability of a surety on a performance bond is coextensive with that of its principal. 74 Am.Jur.2d, Suretyship § 25 (1974). "Most bonds are held to operate only prospectively from their dates, and do not operate retroactively so as to cover defaults arising prior to the execution. This is true unless the terms of the bond clearly show an intention of the parties to cover prior defaults." 11, Appelman, Insurance Law and Practice § 6712 (1944).

Here, the wrongful "acts or defaults" occurred prior to the effective date of the endorsement increasing the amount from $1,000 to $3,000. That endorsement specifically states that the endorsement is effective only as to "acts or defaults committed subsequent to the effective date above stated . . ." [R. Vol. I, p. 15]. Inasmuch as American's liability is coextensive with that of Williams & Kelly, American's liability under the surety bond attached upon the commission of the wrong-

ful "acts or defaults" of Williams & Kelly. Thus, in our view, American's liability cannot exceed the $1,000 limitation provided for in the bond when first issued.

Under the bond, which was "to secure payment of wages and welfare benefits", American was liable for wages and fringe benefits "for services rendered" not paid for by Williams & Kelly. We hold, accordingly, that American's liability under the bond reached only those "services rendered" and not paid for by Williams & Kelly, i. e., $213.30 awarded Hess and $391.50 awarded Bane. The balance of the monies awarded by the arbitrator and affirmed by the District Court did not relate to "services rendered". Thus, they do not involve any obligation on the part of American under the bond.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.