SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION LOCAL
UNION NO. 420, Plaintiff-Appellant,

v.

HUGGINS SHEET METAL, INC., dba
H & H Heating and Sheet Metal,
Defendant-Appellee.

CA No. 84–5577.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 6, 1984.

Decided Feb. 6, 1985.

Ray Van Der Nat, Van Der Nat &
Haywood, Los Angeles, Cal., for plaintiff-
appellant.

Herbert A. Moss, Santa Ana, Cal., for
defendant-appellee.

Before CHAMBERS and NORRIS, Cir-
cuit Judges, and SOLOMON,* District
Judge.

SOLOMON, District Judge:

Appellant, Sheet Metal Workers Interna-
tional Association Local Union No. 420 (Lo-
cal 420), filed this action against Huggins
Sheet Metal, Inc. (Huggins) to compel arbi-
tration or confirm an arbitration award.
The district court granted Huggins' motion
for summary judgment and found that
there was no duty to submit to arbitration.
Local 420 appeals. We reverse and remand
to the district court for the entry of sum-
mary judgment in favor of Local 420.

*Facts*

Huggins Sheet Metal, Inc. was a member
of United Sheet Metal Contractors Associa-
tion (the Association), an employer associa-
tion that represents sheet metal contrac-
tors in their labor relations. The Associa-
tion, on behalf of Huggins, entered into a
collective bargaining agreement with Local
420 for the three years beginning July 1,
1979. The contract was to expire on June
30, 1982 if either party gave ninety days
written notice. On January 31, 1982, Local
420 sent Huggins a letter which stated that
the union intended to reopen the contract.
On April 1, 1982, Huggins resigned from

---

* The Honorable Gus J. Solomon, Senior United    sitting by designation.
States District Judge for the District of Oregon,

the Association and notified Local 420 that it intended to bargain on its own behalf.

The collective bargaining agreement contained the following provisions:

*Article X, Section 8* (in part):

In addition to the settlement of grievances arising out of the interpretation or enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:

(a) Should the negotiations for renewal of this agreement become deadlocked in the opinion of the Local Union or of the Local Contractors' Association, or both, notice of that effect shall be given to the office of the General President of Sheet Metal Workers' International Association and the national office of the Sheet Metal & Air Conditioning Contractors' National Association, Inc. ... Should the General President of Sheet Metal Workers' International Association or the Chairman of the Labor Committee of Sheet Metal and Air Conditioning Contractors' National Association, Inc. fail or decline to appoint a panel member or should notice of failure of the panel representatives to resolve the dispute be given, the parties shall promptly be notified so that either party may submit the dispute to the National Joint Adjustment Board.

The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have

received written notification of its failure.

*Article XII, Section 1:*

This Agreement and Addenda Numbers 1 through 54 attached hereto shall become effective on the 1st day of July, 1979 and shall remain in full force and effect until the 30th day of June, 1982 and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, except as modified by Section 8 of Article X.

After the June 30, 1982 expiration date of the collective bargaining agreement, the parties began to negotiate for a new contract. Huggins notified Local 420 that if negotiations reached an impasse, it would unilaterally change certain terms in the contract, including the arbitration provisions of Article X. On September 17, 1982, when the negotiations became deadlocked, the parties agreed that an impasse had been reached. At the same time, Huggins notified Local 420 that it would eliminate the arbitration provisions in any new contract.

On March 7, 1983, nine months after the impasse, Local 420 demanded that the parties arbitrate the terms of the new collective bargaining agreement under Article X, Section 8 of the old agreement.[1]

On March 11, 1983, Huggins' employees filed a petition with the National Labor Relations Board (NLRB) to decertify Local 420 as their bargaining representative. The NLRB decided to hold an election.

On March 16, 1983, Huggins filed an action in state court to determine if arbitration was required. Eight days later, Local

---

**1.** Article X, Section 8 is an interest arbitration clause. An interest arbitration clause provides for arbitration of a new collective bargaining agreement. A grievance or rights arbitration clause provides for arbitration of a dispute resulting from a controversy over the interpretation or the performance of a provision of an operating agreement. *See Sheet Metal Workers' Int'l Ass'n, Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481, 482 n. 1 (9th Cir.1983).

420 filed this action in the federal court to compel arbitration. Local 420 also removed the state case to federal court, and the cases were consolidated.

Three days before Local 420 filed this action to compel arbitration, it filed a third unfair labor practice charge with the NLRB against Huggins.[2] It charged that Huggins had failed to keep the status quo while negotiating for a new contract. The NLRB dismissed the charge.

In June, 1983, Local 420 asked the National Joint Adjustment Board (NJAB) to arbitrate its dispute with Huggins over the new collective bargaining agreement. Huggins was notified but did not attend the hearing. On June 27, 1983, the NJAB rendered a unanimous decision directing Huggins and Local 420 to enter into a successor agreement which did not include Article X, Section 8 or a similar provision and did not include an industry fund contribution clause.

On August 10, 1983, Huggins, in a state court action, sought to vacate the arbitration award. Local 420 demurred, and the state court dismissed the action.

On August 15, 1983, Local 420 filed a fourth unfair labor practice charge with the NLRB against Huggins for its failure to comply with the arbitration award. The NLRB dismissed this charge.

The district court initially denied the parties' cross-motions for summary judgment in both the action filed by Local 420 to confirm the arbitration award and in the action removed from state court to determine if arbitration was required. On reconsideration, the court granted Huggins' motion for summary judgment. The court held that there was no duty to submit to arbitration, and therefore the arbitration award could not be upheld. Local 420 appealed.

On appeal, Local 420 argues that Huggins has the duty to arbitrate because (1) Article X, Section 8 was still in effect be-

cause the collective bargaining agreement had not expired; and (2) even if the collective bargaining agreement had expired, Article X, Section 8 survived the expiration.

## Discussion

Local 420 contends that Article XII creates a two-step process in arriving at a new collective bargaining agreement. First, the parties must negotiate, and second, if the negotiations reach an impasse, the parties must arbitrate the terms of the new contract under Article X, Section 8.

Here, Local 420 gave written notice of its intention to reopen the contract more than ninety days before the expiration date. Under the terms of Article XII, the contract was to remain in effect until either party terminated negotiations. The parties reached an impasse on September 17, 1982, and at that time Huggins unilaterally eliminated the Article X, Section 8 arbitration provisions.

■ Local 420 filed an unfair labor practice charge with the NLRB to challenge these unilateral changes. The NLRB dismissed the charge. The NLRB found that Huggins had bargained in good faith and only implemented the changes after an impasse. Once an impasse was reached, Huggins was authorized to change or delete the interest arbitration clause in future contracts because an interest arbitration clause is a non-mandatory subject of bargaining and can only be included through mutual consent of the parties. *Sheet Metal Workers' International Association, Local 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456, 458–59 (8th Cir.1983), *see also Atlas Metal Parts Co., Inc. v. NLRB*, 660 F.2d 304, 309 (7th Cir.1981).

■ When Article XII is read with Article X, Section 8, it becomes apparent that the parties intended the arbitration clause to extend beyond the expiration of the contract. The question here is whether such a contract is invalid as against public policy.

**2.** Local 420 previously filed two other unfair labor practices charges, both of which were dismissed by the NLRB.

In *Hotel & Restaurant Employees, and Bartenders Union, Local 703 v. Williams,* 752 F.2d 1476 (9th Cir.1985), decided today, we held an interest arbitration clause can survive the expiration of a collective bargaining agreement. We adopt the reasoning in *Williams* and hold that Article X, Section 8 survived the expiration of the contract and required Huggins to arbitrate the terms and conditions of an extended contract after the parties reached an impasse.

The district court's order granting summary judgment is reversed, and this action is remanded to the district court for the entry of summary judgment in favor of Local 420.

REVERSED and REMANDED.

CHAMBERS, Circuit Judge, concurring in part and dissenting in part:

I concur in part and dissent in part for the reasons I expressed in *Hotel & Restaurant Employees, and Bartenders Union, Local 703 v. Williams,* 752 F.2d 1476, decided this date.