**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 367, AFL–CIO, Plaintiffs-Appellees,**

v.

**GRAHAM COUNTY ELECTRIC COOPERATIVE, INC., an Arizona corporation, Defendant-Appellant.**

**No. 84–2863.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1985.

Decided Feb. 25, 1986.

Michael J. Keenan, Ward & Keenan, Ltd., Phoenix, Ariz., for plaintiffs-appellees.

Charles E. Jones, Jennings, Strouss & Salmon, Phoenix, Ariz., for defendant-appellant.

Before MERRILL, TANG, and BOOCHEVER, Circuit Judges.

TANG, Circuit Judge:

The Graham County Electric Cooperative ("the Co-op") appeals the order of the district court directing arbitration with the International Brotherhood of Electrical Workers, Local 387 ("the Union") despite Co-op's timely notice of termination. We affirm.

## FACTS

The Co-op and Union were parties to a series of collective bargaining agreements. The agreement at issue contained the following provisions as to duration:

> The Agreement shall be in full force and effect from July 1, 1982 to July 1, 1983 and thereafter until either party, hereto shall give to the other party sixty (60) days written notice of desire for change, amendment or termination.... During such sixty day period, conference shall be held by and between the parties hereto with a view to arriving at further agreement, and this Agreement shall remain in full force and in effect during such period of negotiations, as well as during the period of arbitration provided in Article VII, should any amendment be submitted for arbitration as therein provided.

Article VII, section 4, of the agreement requires arbitration over "any difference that may arise between the Cooperative and the Union concerning the overall application or interpretation of this Agreement, ... including differences concerning amendments to this agreement at any termination date...."

On April 6, 1984, more than sixty days before July 1, 1984, the Co-op gave notice to the Union that it desired to terminate the agreement as of July 1. Negotiations over new contract terms began but failed to produce a new agreement. On June 26, 1984, five days before the expiration date set by the old agreement, the Union gave notice of its demand for arbitration of the unresolved issues. The Co-op refused to submit to arbitration.

The Union sued to compel arbitration. The district court held for the Union and ordered arbitration to commence.

## DISCUSSION

As the issue in this case is entirely one of law, we review *de novo*. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.)

(en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ Both the Union and Co-op acknowledge that the language of the arbitration clause, if operative, would cover "interest arbitration." "Interest arbitration" is arbitration over new contract terms. Interest arbitration is distinct from "grievance arbitration," which covers disputes regarding compliance with an existing agreement. *Sheet Metal Workers v. Huggins Sheet Metal, Inc.,* 752 F.2d 1473, 1474 n. 1 (9th Cir.1985).

The Co-op contends that its notice of April 6 resulted in termination of the arbitration clause along with the rest of the contract on July 1. Under this interpretation, the arbitration clause did not extend beyond the termination of the contract and could not govern the resolution of a dispute over the terms to be included in a new contract to commence after the expiration date.

The Co-op relies heavily on *M.K. & O. Transit Lines, Inc. v. Division 892,* 319 F.2d 488 (10th Cir.1963), *cert. denied,* 375 U.S. 944, 84 S.Ct. 350, 11 L.Ed.2d 274 (1963). There, a contract also had a provision for notice of termination. The Tenth Circuit held that the notice of termination foreclosed any reliance on the arbitration clause to compel arbitration of a dispute over the terms of a future contract. The court's holding rested on the contract principle that obligations created by contract (i.e., the arbitration clause) are limited by the instrument that creates them (i.e., by the termination clause). *See Local Union No. 998 v. B & T Metals Co.,* 315 F.2d 432 (6th Cir.1963); *Proctor & Gamble Independent Union of Port Ivory v. Proctor & Gamble Mfg. Co.,* 312 F.2d 181 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Oil Chemical & Atomic Workers v. American Maize Products,* 492 F.2d 409 (7th Cir.1974), *cert. denied,* 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140.

On the facts, however, *M.K. & O.* may be distinguished from the case before us. The *M.K. & O.* court acknowledged that the contract there lacked language that would justify the submission to arbitration of the question of disputed terms of a future contract after termination of the original contract. 319 F.2d at 491. By contrast, the agreement between the Union and the Co-op provides that the Agreement, including the interest arbitration clause, will remain in effect during any arbitration period required once a party demands arbitration.

That timely notice of termination or "termination" itself may not automatically cancel an arbitration clause finds support both from the Supreme Court and from this and other circuits. It is well-established that federal labor policy favors arbitration as the means of resolving disputes over the meaning and effect of collective bargaining agreements, *Nolde Bros., Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), and in effectuating this policy a strong presumption favoring arbitrability exists. *Id.; Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (U.S.1960). *Local Joint Executive Board v. Royal Center, Inc.,* 754 F.2d 835, 837 (9th Cir.1985); *Ass'n of Prof. Flight Attendants v. American Airlines, Inc.,* 767 F.2d 1331, 1333 (9th Cir.1985).

■ In *Nolde,* the Supreme Court held that the obligation to arbitrate a severance pay dispute ("grievance arbitration") survived the termination of the contract. The fact that the contract "terminated" as a result of timely notice rather than "expiring" at its appointed date was not decisive. Consistent with *Nolde,* the obligation to arbitrate a new contract ("interest arbitration") may also survive the termination of an old contract. *Winston-Salem Printing Pressmen & Assistants Union v. Piedmont Publishing Co.,* 393 F.2d 221 (4th Cir.1968); *Mississippi Mechanical Contractor's Assoc. v. Local 681,* 626 F.2d 1225 (5th Cir.1980).

More recently, this court, in *Hotel & Restaurant Employees Local 703 v. Williams,* 752 F.2d 1476, 1479 (9th Cir.1985), extended the *Nolde* rationale to interest arbitration and held that an interest arbitration clause survives the contract expiration date. The court reasoned that "to rule

otherwise would severely limit the usefulness of an interest arbitration clause because negotiations for a new contract often became deadlocked after the expiration date of the contract has passed. To hold that all rights under [the arbitration clause] terminated at the contract's expiration date would effectively invalidate the entire provision and would be inconsistent with the clear and unambiguous language of that [clause]." *Id. Accord Sheet Metal Workers v. Huggins Sheet Metal, Inc.*, 752 F.2d 1473 (9th Cir.1985).

The language of *Local 103* is directly on point. The language of the Co-op's contract indicates that the parties intended that the arbitration clause should continue past the termination of the contract if arbitration had been demanded prior to that termination. Based on our reading of the language of the contract, the order of the district court is

AFFIRMED.