**SHEET METAL WORKERS INTERNATIONAL ASSOCIATION, LOCAL NO. 162, an unincorporated association, Petitioner–Appellee,**

v.

**JASON MANUFACTURING, INC., Respondent–Appellant.**

No. 88–15617.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1990.

Decided April 12, 1990.

Dennis R. Murphy, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for respondent-appellant.

Christopher E. Platten, Wylie, McBride, Jesinger & Sure, San Jose, Cal., for petitioner-appellee.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Jason Manufacturing, Inc. ("Jason") appeals from the district court's judgment confirming an arbitration award in favor of Sheet Metal Workers International Association, Local No. 162 ("union"). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS

Jason was a member of a multi-employer bargaining organization, the Sheet Metal and Air Conditioning Contractors National Association of Sacramento ("SMACNA" or "multi-employer association"). SMACNA, Jason, and the union were signatories to a contract which was scheduled to expire on June 30, 1983. In addition to being a signatory to the standard form of agreement ("agreement"),[1] Jason was also a signatory to Addendum 1.[2]

1. The relevant portions of the agreement read as follows:
Article X, Section 8:
 In addition to the settlement of grievances arising out of interpretation or enforcement of this agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement shall be settled as hereinafter provided:
 (a) Should the negotiations for renewal of this agreement become deadlocked in the opinion of the Local Union or the Local Contractors' Association, or both, notice to that effect shall be given. [If the differences between the parties cannot be conciliated;]
 The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board. The unanimous decision of said Board shall be final and binding upon the parties, reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. . . .
 (c) The National Joint Adjustment Board shall have the right to establish time limits which must be met with respect to each and every step or procedure contained in this section.
Article XII, Section 1:
 This agreement and Addenda numbers one and two attached hereto shall become effective on the first day of July, 1981, and remain in full force and effect until the first day of July, 1983, and shall continue in force from year to year thereafter unless written notice of reopening is given not less than ninety (90) days prior to the expiration date. In the event such notice of reopening is served, this Agreement shall continue in force and effect until conferences relating thereto have been terminated by either party, provided, however, that the contract expiration date contained in this section shall not be effective in the event proceedings under Article X, Section 8 are not completed prior to that date. In that event, this Agreement shall continue in full force and effect until modified by order of the National Joint Adjustment Board or until the procedures under Article X, Section 8 have been otherwise completed.

2. The relevant portions of Addendum 1 read as follows:
Addendum No. 1:
 [I]t is hereby agreed that without terminating or in any manner affecting the provisions of said continuing Agreement, said Agreement is hereby amended as follows: . . . [various provisions as to local working conditions are covered].
 THIS AGREEMENT shall become effective as of the date of signature and shall remain in full force and effect through June 30, 1983, provided, however, that any and all changes made in the present Bargaining Agreement, and/or new or renewed Agreement between the Association and Local Union 162, above referred to, shall be placed into effect by the undersigned Employer effective as of the same date agreed to by the Association and Local Union 162. The undersigned individual Employer hereby agrees to be bound by any and all changes made in the present Bargaining Agreement, and/or new or renewed Agreements between the Association and Local Union No. 162 unless said individual member gives ninety (90) days written notice to the Union of his desire to terminate this Agreement as specified in the paragraph below. [The addendum then discusses provisions for a sale of ownership by the employer.]

Jason gave the union timely notice that it withdrew from SMACNA and intended to negotiate a separate agreement. The parties agree this was Jason's notice of termination of its agreement with the union and was given pursuant to Addendum 1. Jason and the union held ongoing negotiations from the end of April or the beginning of July 1983 until an impasse was reached, in either August or December 1983.

On January 3, 1984, Jason petitioned the National Labor Relations Board ("NLRB") for decertification of the union. On that same day, the union requested National Joint Adjustment Board ("NJAB") arbitration. On January 23, 1984, the union submitted a blocking charge to the NLRB, attempting to stall the decertification process.

Jason received notice of the NJAB arbitration proceeding on January 19, 1984. The NJAB arbitration was scheduled for February 7, 1984 in Miami. On February 3, 1984 Jason submitted to the NJAB its protest of the arbitration proceeding. This protest was based upon the short time period for notice of the hearing, the distant location where the hearing was to be held, the lack of representation of Jason's interests on the NJAB panel, and the fact that Jason had given notice of termination of its agreement with the union. The NJAB denied Jason's protest on February 8, 1984. It announced its decision on February 9, 1984. The arbitration decision bound Jason and the union to a recent SMACNA agreement from July 1, 1983 through June 30, 1985.

On July 13, 1984 the union petitioned the district court to confirm the NJAB arbitration award. Jason moved for a stay pending a decision in the NLRB decertification proceeding.[3] The stay was denied on May 1, 1985. The district court confirmed the NJAB award by a partial summary judgment entered August 9, 1985. Jason's motion for an interlocutory appeal of the summary judgment decision was denied on July 29, 1985.

The district court's partial summary judgment did not decide the issue of damages. For the purpose of trial on the issue of damages, the parties agreed that the terms of the NJAB-imposed agreement would be extended for one additional year through June 30, 1986, because Jason had not given notice of termination of the NJAB-imposed agreement. The court ordered injunctive relief, beginning one year after the final date of judgment in the action, which would require the parties to abide by the agreement for an additional year. The district court accepted the parties' joint statement and on February 4, 1986 entered an order for damages to be computed on that basis.

The NLRB decertification election was held February 3, 1986. Jason won the election. The union was decertified February 6, 1986.[4] Jason moved the district court for reconsideration of the February 4, 1986 summary judgment. This motion was denied June 9, 1987.

On November 25, 1987, 694 F.Supp. 1476, the district court filed its order and judgment fixing the amount of damages. Jason once again moved in the district court for reconsideration. By this motion, it sought to vacate, amend or stay the judgment. The district court denied this motion and awarded attorney fees to the union. The district court based this award of fees on the parties' contract and on its determination that Jason had violated Rule 11 by

Should either party, signatory hereto, desire to terminate this Agreement on June 30, 1983, written notice shall be given not less than ninety (90) days prior to such date. Unless written notice is given, in accordance with the foregoing, this Agreement shall continue in full force and effect from year to year thereafter.

3. Following the NJAB arbitration decision in its favor, the union withdrew its blocking charge from the NLRB action and Jason's petition for

decertification was reinstated on October 13, 1984. This petition was later dismissed on January 25, 1985, reinstated on June 20, 1985, and reviewed on August 9, 1985.

4. On June 6, 1986, Jason filed with the NLRB unfair labor practice charges against the union. Jason amended its NLRB unfair labor practice charges in October 1987. The NLRB is still considering these charges.

**1396**

bringing the motion for reconsideration. This appeal followed.

## ANALYSIS

### A. *Jason Had a Duty to Arbitrate*

Jason contends it is not bound by the NJAB arbitration award because it was not required to submit the contract-renewal dispute to arbitration.

 The question of arbitrability is an issue for judicial determination. *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Associated Plumbing & Mechanical Contractors v. Local Union No. 447 Utd. Ass'n of Journeymen,* 811 F.2d 480, 481 (9th Cir.1987); *Hotel & Restaurant Employees v. Williams,* 752 F.2d 1476, 1478 (9th Cir. 1985). There is a strong presumption of arbitrability "in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubt should be resolved in favor of coverage.' " *AT & T,* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960)); *see also Associated Plumbing,* 811 F.2d at 481. This presumption must be balanced with the principle that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T,* 475 U.S. at 648, 106 S.Ct. at 1418 (quoting *Warrior & Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353); *see Alpha Beta Co. v. Retail Store Employees Union, Local 428,* 671 F.2d 1247, 1250 (9th Cir.1982).[5]

The union contends that notwithstanding Jason's notice of termination, the interest arbitration provisions contained in article X, section 8, and article XII, section 1, of the agreement require NJAB arbitration of a new agreement for the next term, in view of the parties' failure to negotiate a new agreement on their own. Jason argues that Addendum 1 changes the consequences of an impasse in negotiations, because the addendum specifically addresses procedures for termination, as opposed to reopening or renewal, of the contract. In granting summary judgment in favor of the union, the district court held that the interest arbitration provisions of article X, section 8, and article XII, section 1, controlled.

 Absent the addendum, this circuit has repeatedly held that article X, section 8 and article XII, section 1 read together "represent the parties' agreement to negotiate a renewal agreement, and, if no agreement is forthcoming, to submit their dispute to the NJAB for interest arbitration. A unanimous NJAB decision is final and binding upon the parties." *American Metal,* 794 F.2d at 1455. Timely notice of termination does not automatically cancel the interest arbitration clause of a collective bargaining agreement. *Id.; International Bhd. of Elec. Workers, Local No. 367 v. Graham County Elec. Coop., Inc.,* 783 F.2d 897, 899–900 (9th Cir.1986); *see also Hotel & Restaurant Employees,* 752 F.2d at 1479 ("To hold that all rights under [the interest arbitration provision] terminated at the contract's expiration date would effectively invalidate the entire provision and would be inconsistent with the clear and unambiguous language of that article."). We have also stated that there is "no indication in the language of the collective bargaining agreement [in a case involving a party who had withdrawn from

---

**5.** For this reason, the inclusion of an "interest arbitration provision" (a provision which requires arbitration in the event of a failure to renew a collective bargaining agreement) in the collective bargaining agreement is not a mandatory subject of bargaining, a party may not legally insist upon inclusion of such a provision in the agreement, and an existing interest arbitration clause may not be used to perpetuate

itself. *See Hotel & Restaurant Employees,* 752 F.2d at 1479. "The inclusion of an interest arbitration clause in a successor agreement requires the consent of both parties, however, not merely the absence of objection." *American Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n Local Union No. 104,* 794 F.2d 1452, 1457 (9th Cir.1986) (party failed to participate in the arbitration process).

SMACNA] that timely notice of termination of the contract or termination itself would cancel interest arbitration obligations." *American Metal*, 794 F.2d at 1445.

The facts in *Sheet Metal Workers International Association, Local No. 420 v. Huggins Sheet Metal, Inc. ("Huggins")*, 752 F.2d 1473 (9th Cir.1985), are remarkably similar to the present case. In *Huggins*, Huggins resigned from a multi-employer association and notified the union of its intent to bargain on its own behalf. The union had previously given notice of its intent to reopen the contract. The multi-employer/union contract contained the same article X, section 8 and article XII, section 1 as the current dispute. Huggins was notified, but did not attend the NJAB arbitration proceedings instituted by the union. The NJAB rendered a unanimous decision directing the parties to enter into a successor agreement without an interest arbitration clause.

The district court in *Huggins* held that Huggins had no duty to arbitrate. On appeal, we reversed. We stated that "[w]hen Article XII is read with Article X, Section 8, it becomes apparent that the parties intended the arbitration clause to extend beyond the expiration of the contract." *Id.* at 1475. This conclusion required Huggins to arbitrate the terms and conditions of an extended contract after the subject contract had expired and after the parties had reached an impasse. *Id.* at 1476. Huggins was thus bound by the NJAB arbitration decision. *Id.*

In *Huggins*, we did not consider the effect of an employer's termination of its agreement with the union pursuant to a termination addendum. Such an addendum is present in this case in the form of Ad-dendum 1 to the agreement. This addendum is set forth in full in footnote 1, *supra*. Pursuant to this addendum, Jason gave notice to the union and terminated the agreement. But this termination, brought about by notice, is no different from termination as a result of expiration of the agreement, which was the situation in *Huggins*. The addendum under which Jason gave its notice to terminate did not abrogate the obligation incurred in the main agreement to negotiate, and if negotiations failed, to arbitrate. To the contrary, the addendum specifically provides: "it is hereby agreed that without terminating or in any manner affecting the provisions of said continuing Agreement said Agreement is ... amended as [set forth in Addendum 1]."

We hold, therefore, that notwithstanding Jason's termination of the agreement by notice pursuant to Addendum 1, the provisions of article X, section 8, read with article XII, section 1, require arbitration of new contract terms. Jason's withdrawal from the multi-employer association does not alter this result. *See Huggins*, 752 F.2d at 1473–74.[6]

**B.** *The Arbitration Was Neither Partial Nor Unfair*

Jason argues that even if it was required to submit the dispute to arbitration, the NJAB award should be vacated pursuant to the Arbitration Act, 9 U.S.C. § 10 (1988), because the arbitrators were not impartial and the NJAB unreasonably refused to postpone its February hearing.[7]

In the past, this court has declined "to rule upon the applicability of the Arbitration Act to collective bargaining agreements." *Central Valley Typographical Union No. 46 v. McClatchy Newspapers*

6. In light of our holding that Jason was bound to arbitrate, we do not address the union's argument that Jason waived the right to contest arbitrability.

7. Section 10 of the Arbitration Act reads in pertinent part as follows:
In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.
(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown....
9 U.S.C. § 10(b) & (c) (1988).

*("Central Valley")*, 762 F.2d 741, 744 (9th Cir.1985) (citations omitted). *Compare Sheet Metal Workers Int'l Ass'n Local # 420 v. Kinney Air Conditioning Co. ("Kinney")*, 756 F.2d 742, 745–46 (9th Cir. 1985) (applying section 10(b) of Act to collective bargaining agreement), *with San Diego County Dist. Council of Carpenters v. Cory*, 685 F.2d 1137, 1139 n. 4 (9th Cir.1982) ("We do not reach whether the USAA applies by its own force to the arbitration award rendered here."). We decline to reach the issue in this case, because as we explain hereafter, even if the Arbitration Act were to apply, there was no partiality in the arbitrators (9 U.S.C. § 10(b)) or misconduct in refusing to postpone the hearing (9 U.S.C. § 10(c)).

### 1. Partiality

■ "The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award." *Kinney*, 756 F.2d at 745; *see also Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095*, 834 F.2d 751, 755 (9th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620, *recalled and amended on other grounds*, 856 F.2d 1572 (1988). "The party alleging evident partiality must establish specific facts which indicate improper motives on the part of the Board. The appearance of impropriety, standing alone, is insufficient." *Kinney*, 756 F.2d at 746; *see Toyota*, 834 F.2d at 755.

Jason claims that the following factors show the NJAB panel's partiality: (1) the Miami location, (2) the brief advance notice of the hearing, (3) the fact that the NJAB board was made up of Jason's competitors and the union, (4) the union's possible decertification, and (5) the lack of participation by Jason.

Jason, however, agreed to the procedures set forth in the collective bargaining agreement. "When the parties have agreed upon a particular method of dispute resolution, it should generally be presumed fair." *Kinney*, 756 F.2d at 746. By signing the agreement, Jason effectively consented to the NJAB arbitration wherever and when-

ever the next hearing was to convene. Jason also knew of the NJAB procedures and interest prior to signing the collective bargaining agreement. Jason fails to specify any new bias or partiality on the part of the panel. *See id.* (holding party bound even though the management representatives on the board were owners of companies that were union contractors in the same geographic area and had a pecuniary interest in the outcome that was adverse to Kinney).

Jason's nonparticipation argument also fails. "Under a collective bargaining agreement specifically providing for designation of an arbitrator without the participation of both parties, an arbitrator may issue an enforceable default award when one party fails to attend the hearing." *Toyota*, 834 F.2d at 754. As for Jason's contention that the pendency of the NJAB decertification proceeding should have precluded, or at least postponed arbitration, we reject this argument for the reasons set forth hereafter in Part E of this opinion.

We conclude that Jason did not establish facts that create "a reasonable impression of partiality." *See Kinney*, 756 F.2d at 745.

### 2. NJAB's Refusal of a Postponement

■ "A party to an arbitration proceeding conducted pursuant to a collective bargaining agreement ... is not entitled to a postponement merely by requesting one." *Painters Local Union # 171, Int'l Bhd. of Painters & Allied Trades v. Williams & Kelly, Inc.*, 605 F.2d 535, 538 (10th Cir. 1979) (using abuse of discretion standard of review); *see Ping v. National Educ. Ass'n*, 870 F.2d 1369, 1374 (7th Cir.1989). A party must have good cause for requesting a continuance. However, the arbitrary denial of a reasonable request for a postponement may serve as a ground for vacating the award. *Kinney*, 756 F.2d at 746.

■ Whether Jason's protest letter clearly set forth a request for a postponement is unclear. In any event, Jason does not contend that the procedures used by the NJAB, including the timing of the arbitration hearing, conflicted with those set

forth in the standard agreement. Jason agreed to those procedures. Jason cannot now object because the procedures were followed.

## C. The Union's Request for Arbitration Was not Untimely

■ Jason argues that the union waived its right to invoke arbitration by failing to make a timely request for such arbitration. An impasse was reached in either August or December; the union threatened arbitration in December and formally requested arbitration on January 3, 1984. At most, the union waited five months before requesting arbitration.

We reject Jason's waiver argument. Absent a specific contractual time limit, case law suggests that the five-month delay was not untimely. For example, in *Huggins* the union waited nine months after the impasse before demanding arbitration. *Cf. Hotel & Restaurant Employees*, 752 F.2d at 1479 (union did not unreasonably delay its demand for arbitration by waiting less than three months after the employer asserted that the negotiations were deadlocked).[8]

## D. The District Court's Confirmation of the NJAB Award

■ This panel will not "second guess" the decision of the arbitrator. *George Day Constr. Co. v. United Bhd. of Carpenters*, 722 F.2d 1471, 1476–77 (9th Cir.1986). "Where the decision involves contractual interpretation, we must defer as to any decision which draws its essence from the agreement." *Id.* at 1477. If the award on its face represents a "plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced." *Id.; see Holly Sugar Corp. v. Distillery, Rectifying, Wine & Allied Workers Int'l Union*, 412 F.2d 899, 903 (9th Cir.1969); *Desert Palace, Inc. v. Local Joint Executive Bd.*,

679 F.2d 789, 791 (9th Cir.1982) ("The scope of review of an arbitration award is limited to whether the award 'draws its essence from the collective bargaining agreement' and does not 'manifest an infidelity' to the agreement.") (quoting *United Steel Workers v. Enterprise Wheel & Car Corporation*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ The NJAB panel found that all procedural requirements had been met, and the matter was properly before it. As we have previously discussed, this is accurate. The NJAB panel found that Jason was a signatory to the standard agreement and addenda, and that prior to the expiration of the agreement, the parties were unable to agree upon a new contract. This is not disputed. Jason was given an opportunity to submit arguments to the NJAB, but failed to do so. Article X, section 8 of the agreement gives the NJAB the power to settle any controversy arising out of the failure of the parties to negotiate a renewal of the agreement. The NJAB did so. It imposed the terms of a recently negotiated SMACNA agreement upon Jason. Only provisions which were mandatory subjects of bargaining were imposed. The NJAB award drew its essence from the agreement. The award represents a plausible interpretation of the contract. Based upon the foregoing, we conclude that the district court did not err in enforcing the NJAB award.[9]

## E. The Effect of the Union's Decertification

■ Jason contends the decertification of the union by the NLRB requires a finding that the NJAB award was void *ab initio*. The district court rejected this argument and held that the contract would only be void prospectively from the actual date of decertification. We affirm the district court's holding.

---

8. We also note that a party has six months to compel arbitration under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982). *Teamsters Union Local 315 v. Great W. Chem. Co.*, 781 F.2d 764, 769 (9th Cir.1986).

9. We decline to address Jason's antitrust challenge, because this issue was not raised in the

district court. *See Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693–94 (9th Cir.1980) (discretionary review if purely question of law); *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 925, 66 L.Ed.2d 843 (1981).

The NLRA generally requires that a union possess majority support before it may act as a bargaining representative for a group of employees. Sections 8(a)(1), (2) and 8(b)(1), 29 U.S.C. § 158(a), (b), collectively require that a union possess majority support before a collective bargaining agreement can be negotiated. *Mesa Verde Constr. Co. v. Northern Calif. Dist. Council of Laborers*, 861 F.2d 1124, 1127 (9th Cir.1988) (en banc). "Any right to recognition as bargaining agent, which the plaintiff unions secured by virtue of their contracts, ceased and became inoperative on decertification.... An implied condition of the contracts was the continuance of that status as such certified representative." *Retail Clerks Int'l Ass'n v. Montgomery Ward & Co.*, 316 F.2d 754, 757 (7th Cir.1963).

After February 6, 1986, the date of decertification, the union had no rights under the agreement. Jason's employees could not be forced to join the now minority union and the union could not insist upon compensation for an act it could no longer perform—representation. *Modine Mfg. Co. v. Grand Lodge Int'l Ass'n of Machinists*, 216 F.2d 326, 329 (6th Cir.1954). When a "union has been decertified ... it is no longer the representative of the employees, and it cannot become a proper representative of the employees until it reestablishes its majority status." *Glendale Mfg. Co. v. Local No. 520, ILGW*, 283 F.2d 936, 939 (4th Cir.1960), *cert. denied*, 366 U.S. 950, 81 S.Ct. 1902, 6 L.Ed.2d 1243 (1961). "If we compel the employer to bargain with the union under these circumstances, we compel the employer and the union to commit an unfair labor practice in violation of the rights guaranteed to the employees under § 7." *Id.* at 940; *see also National Labor Relations Board v. Retail Clerks Local 588*, 587 F.2d 984, 986 (9th Cir.1978).

As the district court held, the NJAB arbitration decision was void after decertifica-

tion of the union. Until February 6, 1986, however, the union remained the recognized representative of Jason's employees and is entitled to any damages suffered up to that date.[10]

## F. The District Court Did Not Abuse Its Discretion by Refusing to Order a Stay Pending the NLRB Decision on Jason's Decertification Petition or Unfair Labor Practice Charges

Jason contends the district court abused its discretion when it refused to stay its summary judgment pending resolution by the NLRB of the decertification question. As we have previously stated, however, decertification only affected the parties after February 6, 1986; the district court's summary judgment award was limited to an earlier time period.

Jason also argues that the district court erred in refusing to stay summary judgment pending resolution by the NLRB of the unfair labor practices charges. We disagree. When a labor dispute involves both a breach of contract and an unfair labor practice charge, the NLRB and the courts have concurrent jurisdiction. *Central Valley*, 762 F.2d at 746; *Hotel & Restaurant Employees*, 752 F.2d at 1478. An unfair labor practice allegation is not a valid defense to the enforcement of an arbitration award. *American Metal*, 794 F.2d at 1455; *Hotel & Restaurant Employees*, 752 F.2d at 1478; *Sheet Metal Workers' Int'l Ass'n v. Standard Sheet Metal, Inc.* ("Standard Sheet Metal"), 699 F.2d 481, 483–84 (9th Cir.1983). "The mere possibility of a conflict is no barrier to enforcement of the [arbitration] award." *Standard Sheet Metal*, 699 F.2d at 483. Nor does a "pending charge before the NLRB require stay or dismissal of the enforcement suit." *Id.*

The decision whether to stay court proceedings pending a decision by the NLRB is committed to the discretion of the district court; we review a district court's denial of

---

10. We note that the district court approved injunctive relief requiring the parties to abide by the terms of the collective bargaining agreement for one year after the entry of a final judgment. Such injunctive relief would be inappropriate after decertification. However, because the one-year period has expired, and the damage award did not include damages for this period, the issue is moot.

such a stay for abuse of discretion. *Id.; Central Valley*, 762 F.2d at 746.

In the present case, the NLRB action involves allegations of unfair refusals to bargain in good faith, coerced selection of representatives and forced recognition of a minority union, and unfair enforcement of the NJAB procedure once Jason withdrew from the multi-employer organization. We have held similar allegations insufficient to bar enforcement:

> We do not read *Kaiser Steel [Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982)] as allowing this court to invade at will the province of the NLRB. Unfair labor practices remain within its primary jurisdiction. Unlike its treatment of hot cargo clauses, the National Labor Relations Act does not declare interest arbitration clauses unenforceable. We see no bar to our enforcement of the contract here.

*Standard Sheet Metal*, 699 F.2d at 484 (citations omitted). Moreover, the NLRB has not resolved these charges. Thus, no conflict exists at this point. If the alleged conflict actually emerges and enforcement of the NJAB arbitration award would be unfair under the NLRB decision, Jason could have the award vacated. *See Cannery Warehousemen v. Haig Berberian, Inc.*, 623 F.2d 77 (9th Cir.1980). Finally, we note that the issues framed by the NLRB allegations differ from the issue before the district court of whether the contract required NJAB arbitration.[11]

We conclude that the district court did not abuse its discretion in denying Jason's request for a stay of the district court's summary judgment proceedings pending the NLRB's resolution of the unfair labor practices charges.

### G. The District Court's Award of Attorney Fees to the Union for Opposing Jason's Motion for Reconsideration

■ The district court awarded the union $500.00 as reasonable attorney fees for opposing Jason's motion for reconsideration of the court's judgment determining liability for breach of the collective bargaining agreement. This award was made pursuant to an attorney fee provision in the parties' agreement. In its order denying reconsideration, the district court also stated that the fees were imposed against Jason as a sanction for bringing the motion in violation of Rule 11. Jason argues the district court erred in basing its fee award on a Rule 11 violation. We need not decide this question. The award clearly was proper under the parties' contract.

### H. Fees on Appeal

■ The union requests this court award it attorney fees because Jason's appeal is frivolous. "Appellate courts have discretion to award damages, attorney's fees, and single or double costs as a sanction for bringing a frivolous appeal." *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir.1989); Fed.R.Civ.P. 38; 28 U.S.C. § 1912 (1987); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 699 F.2d 484, 485 (9th Cir.1983), *cert. denied*, 465 U.S. 1080, 104 S.Ct. 1445, 79 L.Ed.2d 765 (1984). "An appeal is considered frivolous in this circuit when the result is obvious, or the appellant's arguments of error are wholly without merit." *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir.1981) (citations omitted). Jason's appeal is not frivolous or wholly without merit. Attorney fees for a frivolous appeal are denied.

**AFFIRMED.**

---

11. The NLRB has held that a union does not violate the National Labor Relations Act by submitting unresolved bargaining issues to interest arbitration pursuant to a multi-employer contract after an employer has timely withdrawn from the multi-employer association if the contract *arguably* allows for such arbitration. *International Bhd. of Elec. Workers, Local No. 113*, 296 NLRB No. 144, 132 LRRM 1297 (Oct. 4, 1989). The NLRB will not prohibit a union from pursuing such arbitration, including court enforcement, if the employer is arguably bound by the terms of the arbitration provision. *Id.* The NLRB leaves to the courts' determination the question whether an employer is bound to the interest arbitration provision, because courts are especially well suited for deciding such contractual questions. *Id.*